(No. 14720.—Decree affirmed.)

HUGHES DILLER *et al.* Appellees, *vs.* THE ST. LOUIS, SPRINGFIELD AND PEORIA RAILROAD, Appellant.

*Opinion filed October 21, 1922.*

1. EASEMENTS—*meaning of the word "way," as used in deed.* The word "way" is a very broad and more generic term than the word "road," and may be defined as a path, course or track leading from one place to another or along which one goes, and in construing the language of a deed with reference to the meaning of the word "way," this definition should be applied unless a different meaning is shown to be intended.

2. SAME—*underground ways are subject to same rules as ways on surface.* Ways under the surface of the ground are subject to the same rules of law as control ways upon the surface.

3. DEEDS—*construction of deed containing restrictions.* In construing deeds the intention of the parties must be sought, but the court must seek only to interpret the instrument before it, and while in construing restrictions all doubt should be resolved in favor of the free use of the property, yet legal effect should be given to the various clauses of the deed.

4. SAME—*construction of reservation of an underground way across railroad.* A deed granting a right of way to a railroad company, reserving all coal and other minerals and "the right to drive and maintain underground ways under the surface of the lands conveyed, to connect with other lands or mines," reserves to the grantor, his heirs or assigns, not only the right to reach coal or

mines by such underground way, but to construct such way for any other purpose reasonably necessary to the enjoyment of the grantor's lands, such as to transport grain from an elevator to a loading house on the other side of the right of way.

5. SAME—*right of way may be adapted to improvements of the age.* A reservation of a right of way entitles the one who has the right, to adapt it to the improvements of the age.

APPEAL from the Circuit Court of Logan county; the Hon. FRANK LINDLEY, Judge, presiding.

MILLER & MILLER, (JAMES A. KNOWLTON, of counsel,) for appellant.

T. W. QUINLAN, and PETER MURPHY, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellees, Hughes Diller and the Hurlbut Farmer's Grain Company, filed a bill in the circuit court of Logan county to enjoin the threatened removal of an underground pipe or conduit which they had constructed under the right of way and tracks of appellant, the St. Louis, Springfield and Peoria Railroad, to convey grain from an elevator to a grain-loading house on the other side of the right of way. The matter was referred to a master in chancery, who recommended granting an injunction, and the court thereafter entered a decree perpetually enjoining the removal of the conveyor or conduit. This appeal followed.

The record shows that Hughes Diller owns the premises occupied by the Hurlbut Farmer's Grain Company at Hurlbut siding, in Logan county. Appellant's right of way runs northeasterly at this point, and the elevator of the grain company is easterly of said right of way. Parallel with appellant's right of way, on the westerly side, runs the Chicago and Alton railroad. The grain company, in order to deliver or deposit its grain in the cars of the Alton railroad, must send it from its elevator in some way over or

under appellant's right of way. Addie M. Diller and Isaac R. Diller, the mother and father of Hughes Diller, on October 22, 1904, deeded to appellant, with certain reservations, a strip of land lying parallel with and adjacent to the easterly line of the Chicago and Alton right of way, being the premises referred to in the petition for injunction. The interest in these premises reserved by this conveyance was afterwards obtained by Diller, and he now holds whatever right his father and mother had by reason of said reservations. One of the reservations states that the deed is made subject to the following express conditions: "All coal and other minerals underlying the strip conveyed are reserved. There is also reserved the right to drive and maintain underground ways under the surface of the lands conveyed, to connect with other lands or mines." By another provision in the deed it is stated that if the strip should cease to be used for railroad purposes the title to the same would revert to the grantors. The evidence in the record indicates that the grain company loaded grain into the cars of the appellant; that it had difficulty in getting enough cars to load the grain it received and that (apparently because of this fact) it lost some business; that in 1920 it constructed an underground conduit about thirteen inches in diameter, semi-circular, with the flat side up, under the tracks of appellant, and lined the place thus tunneled with concrete in such a way as to make a solid construction. After it had constructed the conduit it covered it with dirt, which was tamped or pressed down over the conveyor on the upper side, and this pipe or conduit at the time of the hearing in the lower court was completely covered with dirt or cinders, except that there was a small part, where the land of the right of way was not level, which showed above the surface of the right of way. Except at this point the conveyor was five inches or more below the surface of the ground, and extended under the main and switch tracks of appellant to a grain-loading house of the grain company, and grain was

conveyed through it from the elevator to the loading house and from the loading house onto the cars of the Alton railroad. On December 2, 1920, a notice was served on the grain company by appellant by mail, to the effect that the latter would not consent to or permit the maintenance of the underground conveyor across its right of way and under its track and demanding its removal. Thereafter, because of said notice, this bill was filed for an injunction, which was granted.

It is conceded by counsel that the rights of both parties must be determined largely from the provisions of the deed in question, which granted the right of way to appellant to construct its road over this property. It is argued by counsel for appellant that the reservation in the deed did not authorize the construction of such a conveyor or conduit, and that therefore its construction was a trespass and its maintenance constitutes a nuisance, which a court of equity has authority to remove. They further argue that, properly construed, the reservation as to the ways under the right of way of appellant was inserted in the deed to give the grantors of the land, and those claiming under them, the right to mine coal under the right of way and to cross under the surface in connection with such mining. Counsel for appellees argue that the reservation clearly shows that the ways might be constructed not only for mining purposes, but also for the purpose of connecting with any adjoining land to which the original grantors might have access; that the reservation did not limit the use of the ways to coal ways or mining ways, but was a general reservation to the grantors of a way for any purpose, unrestricted as to its use; that such a construction is necessary in order to give every word of the reservation its meaning.

The Standard Dictionary defines "way" as "a path, course or track leading from one place to another or along which one goes; a road, street, highway, lane, passage, channel," etc.; and then, referring to the legal definition,

the same authority, quoting from Washburn on Law of
Easements, (p. 160,) says: "One of the most common class
of easements or servitudes known to the law is that of ways,
or the right of one man to pass over the land of another in
some particular line." In 40 Cyc. 847, note, it is said that
"there are three classes of ways,"—naming highways, pri-
vate paths and private ways. In the case here under consid-
eration the deed states that the ways are to be underground
ways, and may be "driven," which indicates an underground
process. Webster's Dictionary defines "to drive" as "to
tunnel," and this is the ordinary definition by lexicograph-
ers. Ways under the surface of the ground are subject to
the same rules of law as control ways upon the surface of
the ground. (9 Corpus Juris, 979.) In construing lan-
guage with reference to the meaning of the word "way,"
the ordinary definition should be applied unless a different
meaning is shown to be intended. In construing deeds the
intention of the parties must be sought, but the court must
seek only to interpret the instrument before it and not to
create a new and distinct one. (*Anderson* v. *Stewart,* 285
Ill. 605.) While in restrictions all doubt should be resolved
in favor of the free use of the property, (*King* v. *Lee,* 282
Ill. 530,) legal effect should be given to the various clauses
of the deed. (*McReynolds* v. *Stoats,* 288 Ill. 22.) "A
grant or reservation of an easement in general terms is lim-
ited to a use such as is reasonably necessary and convenient
and as little burdensome to the servient estate as possible
for the use contemplated. In other words, an unlimited
conveyance of an easement is in law a grant of unlimited
reasonable use." (9 R. C. L. 787.) "It is only where a
right of way is  *  *  *  narrowed, by the terms of the
grant, to definite purposes that the extent of the easement
is restricted. Where  *  *  *  not limited in its scope by
the terms of the grant it is available for the reasonable
use to which the dominant estate may be devoted." (*Par-
sons* v. *Railroad Co.* 216 Mass. 269.) The court of er-

rors and appeals of New Jersey, in *Tallon v. Hoboken*, 60 N. J. L. 212, held, on page 218: "It is settled law that the owner of an easement in the land of another is not bound to use it in the particular manner prescribed by the instrument which creates it. He may use it in a different manner if he so desires, provided he does not, in doing so, increase the servitude nor change it to the injury of the owner of the servient tenement." This record shows, without controversy, that appellant is not in any way injured by the construction of this conduit or conveyor under its right of way.

The word "way" is a very broad term and more generic than the word "road" and may refer to many things besides roads. (*Kister v. Reeser*, 98 Pa. 1; *Hammond v. Hammond*, 258 id. 51.) In this last case it appears that it had been agreed by deed to permit the use of a road twenty feet in width from certain premises across the creek to a public road; that for twenty-one years after the grant the only means of crossing was a ford; that then, to obviate the difficulties connected with the ford, the grantee built a bridge across the creek ten and one-half feet wide; that there was a stone abutment on each side and two stone piers in the bed of the creek, on which the bridge was placed. It was held by the court that the grantee had a right to construct the bridge, the opinion saying: "We cannot impute to the grantor the intent of affording access to and from the farm in question only in times of low water. He might have limited the grant to the ford only, but he did not. The words of the grant are to receive a reasonable construction. * * * The grantee of a defined way has the right to do whatever is necessary to make it passable or usable for the purposes named in the grant."

The reservation in the deed here in question is an unlimited one,—not for one way but for any number of ways. The ways being unlimited in point of number or location, and being clearly not only to reach coal or mines but other lands, the parties to such deed and reservation might rea-

sonably have understood that such ways could be used for the purpose of conveying and transferring grain to other lands. As appellant's right of way is immediately adjoining the right of way of the Chicago and Alton Railroad Company it seems reasonable to hold that the reservation includes a way to convey property under appellant's right of way, to be delivered to the Alton railroad as a common carrier, and that the conveyor in question is a reasonable and proper means of access to the Alton railroad right of way. In determining the question of reasonableness this court cannot be unmindful of modern methods and means of performing work which heretofore it was necessary to perform in other ways. A reservation of a right of way entitles the one who has the right to adapt it to the improvements of the age. (*United Land Co.* v. *Great Eastern Co.* L. R. 17 Eq. Cas. 158; *Doud* v. *Kingscote,* 6 M. & W. 173.) By "necessary use" is meant such use as is reasonably necessary to the full enjoyment of plaintiff's premises. There is nothing in the deed in this case which limits the use of the ways. Any use reasonably necessary may be made, and the use may vary from time to time. (*Newcomen* v. *Coulson,* L. R. 5 Ch. Div. (1877) 133; see, also, *Willoughby* v. *Lawrence,* 116 Ill. 11.) If a subway, as that term is ordinarily used, had been constructed under the right of way of appellant, beyond question the grain company could have conveyed grain under the right of way through the subway, provided it did not interfere with the use of the right of way for railroad purposes. It would seem quite manifest that this conveyor or conduit was a particular form of subway that could be used for the transportation of grain from the grain company's elevator to the grain-loading house on the other side of appellant's right of way.

The conclusion on this question is in accord with the reasoning of this court in a somewhat similar matter in *Attebery* v. *Blair,* 244 Ill. 363, where the court said (p. 372):

"It is contended that after the coal shall be removed from under the right of way the defendant would not be permitted to use the rooms, entries and mining ways for mining ways to and from beds of coal in other lands. If the construction of the reservation contended for is correct, all that the grantors reserved was a right to remove the coal from under the strips of land, and could not afterward cross the same to remove coal from their own adjoining lands. No such unreasonable conclusion is insisted upon, and it is conceded that they would have the right to use the rooms, entries and mining ways for mining ways to and from beds of coal on the remainder of their own lands. But there is no ground for a distinction between such use and the use of the mining ways for access to other lands. The purpose of the reservation was to separate the title to the coal under the surface from the title to the surface, together with the mining rights connected with it. No conveyance of the coal or such rights was made, and the coal, with all the rights pertaining to it, remained in the grantors, * * * and we see no reason why the grantors could not use the space where the coal was found in any way which they saw fit, as though no conveyance had ever been made."

The structure involved in this proceeding consists of a metal tube some thirteen inches in diameter, extending under and across appellant's right of way and connecting the grain company's elevator, which stands upon land of Diller, with a loading house standing upon the Chicago and Alton railroad right of way. It does not damage or injure the right of way of appellant, and as we construe this deed fairly comes within its terms.

What we have said on this subject renders it unnecessary to consider several other points raised in the briefs.

The decree of the circuit court will be affirmed.

*Decree affirmed.*