Robert H. Pettigrew, Plaintiff-Appellant, v. National Accounts System, Inc., a Delaware Corporation, Defendant-Appellee.

National Accounts System, Inc., a Delaware Corporation, and Aurora Accounts Service, Inc., an Illinois Corporation, Plaintiffs-Appellees, v. Lincoln Collection Service, Inc., an Illinois Corporation, and Robert H. Pettigrew, an Individual, Defendants-Appellants.

Gen. No. 65–76.

Second District.

February 1, 1966.

George W. Presbrey, of Aurora, for appellants.

Givler, Meilinger, Casey & Flanders, of Aurora, and Pedersen & Houpt, of Chicago, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

This appeal involves two cases which were consolidated, the first, a suit for declaratory judgment by Robert H. Pettigrew, herein called Pettigrew, against National Accounts System, Inc., herein called National; the second, a suit for injunction by National and Aurora Accounts Service, Inc., herein called Aurora Accounts, against Pettigrew and Lincoln Collection Service, Inc., herein called Lincoln.

The trial court heard the two cases, as consolidated, and rendered a decree against Pettigrew and in favor of

National in the declaratory judgment action; and granted National and Aurora Accounts an injunction, permanent in nature, on their complaint, whereby Pettigrew and Lincoln were restrained from engaging in the credit service and debt collection business within a 25-mile radius of the City of Aurora, for a period of two years from the date of February 12, 1965.

Pettigrew and Lincoln have perfected this appeal from the foregoing decree urging, among other grounds, that they were denied procedural due process, as guaranteed by Section 1 of amendment XIV of the Constitution of the United States, and section 2 of article II of the Constitution of the State of Illinois, by the manner in which the trial court conducted the proceedings below. We agree with this contention.

In deciding this case, we had no desire or intent to enlarge our jurisdiction and were cognizant of sections 5b and 7 of article VI of the Illinois Constitution, and Rules 28-1 and 47 of the Supreme Court. (Ill Rev Stats 1965, c 110, pars 101.28–1 and 101.47.) Also, we believed that the constitutional principles involved were well settled.

█ Our decision required a factual analysis of the procedures followed in the case and a construction of the terms of the Civil Practice Act and the Rules of the Supreme Court in their application to such facts, in the light of the well settled constitutional principles herein recited—principles which are no longer fairly debatable and, consequently, not susceptible of being parlayed into substantial constitutional questions. (See: The People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1965); First Nat. Bank & Trust Co. v. Evanston, 30 Ill2d 479, 483–486, 197 NE2d 705 (1964); People v. Valentine, 60 Ill App2d 339, 344–349, 208 NE2d 595 (1st Dist 1965).)

█ With due deference to the jurisdiction of the Supreme Court in cases involving constitutional questions—yet firm in our belief that this court, of necessity,

has jurisdiction over certain and limited aspects thereof—we decided this case, in the above manner, on the threshold issue of procedural due process.

Pettigrew filed his complaint, seeking a declaratory judgment, on April 9, 1965. Essentially, the complaint alleged that he was hired in 1957 by National to manage its Aurora collection agency office; that in 1964, National forwarded to him a pad of employment agreement forms for his signature and that of the other employees of the office; and that he signed such an agreement, bearing the date August 31, 1964, without any additional salary or other consideration. The agreement provided in part:

> "That Employee will not directly or indirectly, as principal, agent, employee, or in any other capacity, for the term of two (2) years after the date of termination of his employment hereunder, enter or engage in any branch of the business relating to the collection of debts, demands, accounts, estates or claims of any kind, or in any other business or activity which is in any respect, or may be considered by Employer to be competitive with the business of Employer within a radius of fifty (50) miles of any of the places of business of Employer or within a radius of fifty (50) miles of any of the offices of any firm or corporation owned or controlled by Employer."

It also provided that either party could terminate the employment upon two weeks written notice, and that the employer could also terminate the agreement at any time without notice for cause.

The complaint further alleged that National fired Pettigrew in February, 1965, without explanation; that he returned to the collection business to earn a livelihood; that National notified Pettigrew to cease engaging in the collection business; and that he, therefore, sought a judgment declaring the rights and duties of the parties under

347

the employment contract dated August 31, 1964. Summons was served upon National in the declaratory judgment action on April 9, 1965.

On April 12, 1965, National and Aurora Accounts (which we shall treat as identical for our purpose here) filed a suit based upon the same contract and two preceding ones, alleging that Pettigrew had been branch manager of the Aurora office since 1957; that he had thus acquired knowledge of a confidential nature; that he had contacted a substantial number of customers of plaintiff; that after the termination of his employment, he caused Lincoln to be incorporated and entered into the collection business in competition with National, contrary to the employment agreements; and that National was entitled to a judgment for $50,000 for damages already sustained, a temporary injunction pending final hearing, and an injunction, permanent in nature, prohibiting further competition from Pettigrew and Lincoln within a 50-mile radius of Aurora for a period of two years from the date of termination of the employment. This complaint was served upon Pettigrew and Lincoln on April 13, 1965.

The parties then appeared before the court on April 20, 1965, apparently on a notice of National and Aurora Accounts for hearing for a temporary injunction. At this time the cases were consolidated by agreement, and the court advised the parties that the consolidated cases would be continued until the following morning, at which time the court would start hearing proof. Counsel for Pettigrew and Lincoln objected, stating that the only matter before the court was a motion for temporary injunction, and Pettigrew further asserted that he had not yet had an opportunity to file a motion, an answer or other pleading to the complaint for injunction.

On the following morning—twelve days after suit was commenced and summons served in the declaratory judgment action, and eight days after summons was served in

348

the injunction action—the court proceeded to hear proof. At this time, National filed an answer to the declaratory judgment complaint, and a lengthy affidavit setting forth matters in support of its motion for temporary injunction. Pettigrew and Lincoln filed a motion to dismiss the complaint for injunction.

Counsel for Pettigrew again objected to proceeding on the merits, again stating that the only matter before the court was a hearing on the application for temporary injunction. Counsel for National suggested that if opposing counsel were not ready to proceed on the declaratory judgment action, the motion for temporary injunction was still before the court. The court indicated it would then proceed with both cases. Counsel for Pettigrew stated that he had not had an opportunity to examine the answer filed to his complaint for declaratory judgment; that an answer had not yet been filed by him to the complaint for injunction; that the latter suit was thus not at issue; and that he was not ready to proceed on the merits of either case and thus wanted the cases set for hearing at a later date.

The court then heard and denied the motion to dismiss the complaint for injunction and proceeded to hear proof. Just prior thereto, counsel for National indicated they were before the court only on their motion for temporary injunction, stating, "Your Honor, we have moved for a motion for temporary injunction, based upon our verified complaint and upon our affidavit in support of the verified complaint." On several occasions throughout the hearing, counsel for Pettigrew made objections to testimony on the ground that it was not pertinent to the issue of whether a temporary injunction should issue. The court did not point out, at those times, that it was proceeding on more than the motion for temporary injunction.

At the close of National's proof, counsel for Pettigrew again indicated that it was his understanding that they were before the court only on the matter of the tempo-

rary injunction. The court replied that the two cases were consolidated and set for hearing that day, and that it was hopeful that both cases could then be disposed of. Proceedings were then adjourned until the following day when counsel for National stated to the court, "Your Honor, we are, as you know, before you on our motion for a temporary injunction. We feel that, with the witnesses we have presented, together with the verified complaint and affidavit in support of our motion for temporary injunction, that we have sustained our burden. . . . We rest on our motion for temporary injunction, Your Honor."

Pettigrew then testified on behalf of the defense. Thereafter the court entered the decree dismissing the complaint for declaratory judgment and granted an injunction, permanent in nature. Counsel for Pettigrew renewed his objection to the hearing on the merits and the issuance of a final decree.

■■■ The procedural aspects of due process and equal protection of the laws require that a person be given notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. In City of Chicago v. Cohn, 326 Ill 372, 158 NE 118 (1927), at pages 374 and 375, the Court stated:

> "The guaranty of due process of law requires that every man shall have the protection of his day in court and the benefit of the general law,—a law which hears before it condemns, which proceeds not arbitrarily or capriciously but upon inquiry and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. (Citations) . . . The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case."

Also see: Durkin v. Hey, 376 Ill 292, 300, 33 NE2d 463 (1941); Truax v. Corrigan, 257 US 312, 332 (1921); Simon v. Craft, 182 US 427, 436 (1901); In re Estate of Hoffman, 49 Ill App2d 436, 441, 200 NE2d 37 (1st Dist 1964).

██ A fundamental requisite of procedural due process is that every man shall have the protection of his day in court and the benefit of an orderly proceeding according to the general law or established rules; and that the hearing shall not be arbitrary, but rather shall afford to him an opportunity to be heard in his defense and shall assure to him an inquiry on the issues of the case, wherein judgment is rendered only after trial. There must be an intrinsic fairness of procedure by which any judgment, order or decree is rendered. This is essential to the untainted administration of justice—the most cherished aspect of our judicial system.

██ Tested by these standards, we find that appellants were not afforded the due process guaranteed them by our Constitutions. What is, or is not, a denial of due process does not readily lend itself to any refined definition, but it can be rendered progressively more clear by the course of litigation. Where, however, the procedure followed by a court is so lacking in a principle or principles basic to our system of justice that it offends the system, that procedure must be condemned as a denial of due process.

In the case at bar, Pettigrew, called into court on a motion for a temporary injunction, found himself directed by the court to proceed on the merits of his suit for a declaratory judgment, filed only eleven days before; and to proceed in defense of the suit against him for damages in the sum of $50,000, and for a permanent injunction which had been on file only seven days. At that time, no answer had been filed to his complaint—the answer being filed the following morning; and no plead-

ing had been filed by Pettigrew to the suit against him—the motion to dismiss likewise being filed the next morning. Answer was never filed to the complaint for injunction, and judgment was rendered prior to the expiration of the time permitted for its filing.

■■ Without sufficient opportunity to examine the answer filed to his complaint, Pettigrew could not determine what evidence he should present to establish his contention on the issues made by the pleadings. As to the injunction complaint, he was not permitted the time allowed by the Civil Practice Act to file his answer and thereby put matters at issue. Under this posture of the case, it was not proper to proceed with a hearing on the merits prior to issues having been formed by the pleadings. The right to plead, according to the general law and established rules, is implicit in any concept of ordered liberty and fairness and is required by a right sense of justice. See Roth v. Roth, 284 Ill App 71, 72, 1 NE2d 724 (1st Dist 1936). The action of the trial court in compelling the litigants to proceed on the merits of the case, at a time when both parties asserted they were before the court only on a motion for temporary injunction, without permitting them to plead in the manner prescribed by the Civil Practice Act and Rules of Court, and in denying them the opportunity to prepare and present their case fairly and fully, was a denial of due process.

National contends that a plea of unpreparedness may not be a basis for a claim of denial of due process. However, the cases cited by National are cases in which the parties were at issue and had been given the opportunity to file pleadings. Thereafter, the normal rules prevail as to whether or not a motion for continuance should be granted. These cases are unlike the one at bar where the parties were not given an opportunity to plead pursuant to the provisions of the Civil Practice Act and to prepare their cases for trial in the light of the issues raised

in the pleadings. The fact that Pettigrew asserted he had no further evidence to present does not warrant the assumption that if given the normal opportunity to prepare for trial under the issues of the pleadings, he would not have found further evidence to present.

This distinction is suggested in the quotation in National's brief taken from the case of Grattan v. Ahlberg Bearing Co., 373 Ill 455, 26 NE2d 499 (1940), where it was stated at page 457:

> "It is necessary in order to constitute due process of law within the provisions of the State and Federal constitutions, *that orderly proceedings according to established rules, which do not violate fundamental rights, shall be observed,* but where the person affected has due and sufficient notice and an adequate opportunity to present his defense, the constitutional requirements of due process of law are met." (Emphasis ours.)

National further contends that Pettigrew waived his objection to formal pleadings by proceeding with the trial of the case. In all but two of the cases cited by National in support of this contention, all of the parties had filed their pleadings, and the only question involved was the propriety of permitting evidence on certain issues not raised by the formal pleadings. No question of denial of due process was presented under such factual situation.

In Witteman v. Goeke, 200 Ill App 108 (2nd Dist 1916) cited by National, the record did not show that there was any plea to the common counts, and the parties, without objection, voluntarily proceeded to trial. However, the Appellate Court pointed out that while no issue had been formed on the common counts, a plea had been made to the special count, and the judgment entered in the case was presumed to be correct upon the issues made by these written pleadings. Said case is not authority for any waiver of rights herein by Pettigrew.

In City of Chicago v. Campbell, 27 Ill App2d 456, 170 NE2d 19 (1st Dist 1960), likewise cited by National, the time for filing an answer had elapsed and the defendant, who was not rushed to trial, elected to represent himself, appeared, and proceeded to trial voluntarily without having filed a formal answer. Under these circumstances the court held that the defendant waived the necessity of a formal joinder of issues. The distinction between said case and the one at bar is apparent, and it does not indicate any waiver of rights by Pettigrew, who, over his objections, was compelled by the trial Court to proceed with proof.

Further, National has referred to several Federal cases for the proposition that a permanent injunction may under certain circumstances be issued upon a hearing for temporary injunction and without further hearing. While such procedure may be proper under certain circumstances, as where there are no controverted questions of fact, it is not appropriate in the case at bar, where Pettigrew was denied the opportunity prescribed by law to plead and to prepare his case for an orderly presentation. The procedure observed by the Court in the case at bar does not comport with the traditional ideas of fairness.

Other substantive matters were raised by the parties which we have not considered in view of our determination that the proceedings below were a denial of due process. The decree appealed from is, accordingly, reversed and the cause remanded to the trial Court with directions to dissolve and set aside the injunction previously granted and to proceed to hear the case in accordance with the views herein expressed.

Reversed and remanded with directions.

ABRAHAMSON, P. J. and MORAN, J., concur.