ALFRED N. KOPLIN, Plaintiff-Appellee, v. HINSDALE HOSPITAL *et al.*, Defendants-Appellants.

Second District   No. 2—90—0845

Opinion filed December 31, 1990.—Rehearing denied February 1, 1991.

Fred I. Feinstein and Bruce H. Weitzman, both of McDermott, Will & Emery, of Chicago (Michael D. Phillips and Douglas C. Tibble, of counsel), for appellants.

Fredric Adam Cohen and Theodore A. Shapero, both of Rudnick & Wolfe, of Chicago (Thomas F. Geselbracht, of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants, Hinsdale Hospital and Harris Bank Hinsdale as trustee under trust dated February 1, 1990, and known as trust No. L–2525 (referred to jointly hereafter as Hinsdale Hospital or the Hospital), bring this interlocutory appeal from the order of the circuit court of Du Page County preliminarily enjoining it from using its right-of-way over Spinning Wheel Road, a road privately owned by plaintiff, Alfred N. Koplin, for ingress or egress to or from the Office Park of Hinsdale property which is immediately adjacent to Spinning Wheel Road on the west. The Hospital also appeals the court's order preliminarily enjoining it from using its own property immediately adjacent to Spinning Wheel Road on the east as a temporary parking facility. No issue is raised concerning the further order of the court mandatorily enjoining the Hospital to restore the curb where it was cut on the west side of Spinning Wheel Road. This court has jurisdiction over the Hospital's appeal under the provisions of Supreme Court Rule 307 (107 Ill. 2d R. 307(a)(1)).

The Hospital contends the court erred when it (1) preliminarily enjoined it from crossing the servient property (referred to hereafter as Spinning Wheel Road) in an east-west direction because its easement provides an unlimited right-of-way "for all purposes"; (2) preliminarily enjoined its use of its own property as a temporary parking lot because Koplin's original motion for preliminary injunction did not request such relief and it had no opportunity consistent with due process to prepare for or respond to plaintiff's amended complaint requesting such relief; and (3) preliminarily enjoined the use of its property as a temporary parking lot because there was no evidence of, and it did not find, irreparable injury, a substantial likelihood of success on the merits, or lack of an adequate remedy at law.

Initially, we address the Hospital's motion to strike the statement of facts included in Koplin's appellee's brief, and Koplin's objections thereto, which we ordered to be taken with the case. The Hospital asserts Koplin's statement of facts is argumentative, mischaracterizes the various portions of the testimony and aspects of the proceedings, and contains facts unsupported by the record on appeal. The Hospital urges that this court strike the statement in its entirety because the improprieties are so pervasive. Koplin objects, arguing his statement of facts is confirmed by the record or is "based upon reasonable inference[s] drawn from the [r]ecord as a whole *** in an effort to state the facts of the case fairly and accurately."

■ Supreme Court Rule 341(f) provides in pertinent part that the appellee's brief need not contain a statement of facts as required in subsection (e)(6) of the Rule except to the extent that the presentation by the appellant is deemed unsatisfactory. Any statement of facts, whether presented by the appellant or the appellee, is to be stated accurately and fairly without argument or comment. 113 Ill. 2d Rules 341(e)(6), (f).

An appellee's statement of facts which was neither objective nor without comment and which did not identify in what respect the appellant's statement was deficient was found to offend against the requirements of Rule 341 in *People v. Williams* (1967), 86 Ill. App. 2d 209, 214. Observing that the material set forth in the statement of facts more appropriately could have been placed in the argument portion of the brief, the court did not strike the statement of facts but, rather, concluded simply that, "a following of the rules as to briefs is to be encouraged." (86 Ill. App. 2d at 214.) In several other cases, the appellants' statements of facts were found to be either a mischaracterization of the evidence, argumentative or highly conclusional. (*Wald v. Chicago Shippers Association* (1988), 175 Ill. App. 3d 607, 616; *Oakleaf v. Oakleaf & Associates, Inc.* (1988), 173 Ill. App. 3d 637, 646; *James v. Shig Yasunaga* (1987), 157 Ill. App. 3d 450, 452.) The statements of facts were not stricken, however, where they otherwise were supported by record references and were found to be not so flagrantly violative of the rules as to hinder or preclude review of the cause.

■ Although we find Koplin's appellee's statement of facts fleshes out the evidence more than we believe is justified by the record and tends to be phrased in conclusional terms, it nonetheless is supported by appropriate record references and is not so flagrantly argumentative or conclusional as to hinder or preclude re-

view. Moreover, as Koplin notes in his objections, the Hospital's statement of facts is not without fault, either, inasmuch as it omits any reference whatever to Koplin's expert traffic engineer, Dan Goetsch. Both parties—and this court—would have been better served by presentation of a thorough, entirely factual statement of the evidence presented as required by the supreme court rules. "Reasonable inferences drawn from the record as a whole" are simply not facts and do not belong in the statement of facts. Nevertheless, the Hospital's motion to strike is denied, and we proceed to consider the cause.

A visual depiction of the location of the properties implicated in this appeal is provided in appendix A and will be helpful to an understanding of the case. It is based on plaintiff's exhibit No. 2 which was admitted at trial. In general terms, the properties involved are located in Hinsdale, north of Ogden Avenue, west of the Tri-State Tollway, east of Salt Creek Lane, and south of Salt Creek itself.

Legal title to parcels A and B shown on appendix A are held in trust by Old Kent Bank and the beneficial owners are Alfred N. Koplin and his wife. Parcel A was improved in 1968 with a 17-story, 156-unit apartment building and has a near-capacity residency rate of about 250 to 300 tenants. Parcel B was improved in 1967 with a five-floor commercial office building and parking lot. Parcel C shown on appendix A was acquired by Alfred N. Koplin individually in 1967 to provide access to the otherwise landlocked parcels A and B. It is presently a private road known as Spinning Wheel Road which Koplin improved with pavement and curbs and which he maintains.

The trustee's deed conveying parcel C to Koplin recited that it was subject to: "[a] perpetual right-of-way for all purposes over subject property in favor of [the east property]." The beneficial and legal owners, respectively, of the east property are the defendants, Hinsdale Hospital and Harris Bank Hinsdale as trustee. The front portion of the east property (nearest Ogden Avenue) is presently improved with a building used as a clinic providing health rehabilitation and treatment services and meeting and health education facilities. This building formerly was used and known as the Spinning Wheel Restaurant. There is a parking lot located on the east side of the building which is accessed from County Line Road and Ogden Avenue. A service road in the back (west side) of the building is accessed from Spinning Wheel Road by way of a curb cut on the east side of Spinning Wheel Road. It is used for loading and unloading,

and parking of service and maintenance vehicles. Clinic staff sometimes park back there also. A grassy lot located on the rear (north) portion of the east property was used primarily by kids as a baseball field until late May 1990 when the Hospital converted it to a temporary parking facility.

The instant cause was precipitated when the Hospital president, Ken Bauer, sent Koplin a letter dated May 25, 1990, advising him that the Hospital "intends to use its easement over Spinning Wheel Drive [sic], to provide access to the Office Park of Hinsdale property immediately west of the easement [the west property]." With no prior or subsequent permission from Koplin, the Hospital cut an opening in the west curb of Spinning Wheel Road during the week of May 28, 1990. A gravel road extends from that curb cut to the parking lot of one of the office buildings located on the west property in the Office Park of Hinsdale. The west property is owned by the Office Park of Hinsdale Corporation which, in turn, is owned by the Adventist Health Resources, a sister corporation of the Hinsdale Hospital. The gravel road extending from the west curb cut of Spinning Wheel Road affords cars traveling west thereon indirect access to Salt Creek Lane, a private road which intersects at its south end with Ogden Avenue and Oak Street, a signalized intersection. Utilizing this same route in an eastbound direction, cars can access the temporary parking lot on the Hospital's east property by crossing Spinning Wheel Road from the west curb cut to the service road at the east curb cut and thence to the newly graveled-over baseball field parking lot. Thus, persons traveling eastbound or westbound from the temporary parking lot would have access to the signalized intersection at Salt Creek Lane and Ogden Avenue rather than having to make left-hand turns from or onto Ogden Avenue at Spinning Wheel Road, where there is no traffic signal.

Koplin filed his original single-count complaint seeking to enjoin the Hospital from using its Spinning Wheel Road easement for ingress and egress to the west property. The complaint also sought a temporary restraining order and preliminary injunction enjoining the Hospital's misuse of the easement and an order directing the Hospital to restore the curb where it had been cut on the west side of Spinning Wheel Road.

On June 8, Hinsdale Hospital filed its answer and affirmative defenses to the complaint. As its first affirmative defense, the Hospital relied on the trustee's deed granting the easement, and, as its second affirmative defense, it alleged its plan for improved traffic flow to and from its property across its Spinning Wheel Road ease-

ment would improve, not harm, the traffic congestion and safety situation at Ogden Avenue and Spinning Wheel Road. On that same date, the parties entered into an agreed order whereby the Hospital agreed to erect a fence at the west curb cut, thus preventing access to Spinning Wheel Road and preserving the status quo. The agreed order set Monday, July 2, as the date for a hearing on Koplin's motion for a preliminary injunction.

On Friday afternoon, June 29, Koplin served Hinsdale Hospital with a motion for leave to file a six-count amended complaint and placed a phone call to counsel for the Hospital which was not returned. The proposed amended complaint for the first time raised issues concerning, *inter alia*, the zoning violations engendered by the proposed temporary parking lot use of the Hospital's east property. On that same date, Koplin notified the Village of Hinsdale that he intended to proceed against the Hospital for its alleged zoning violations as provided in section 11—13—15 of the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—15).

At the preliminary injunction hearing on Monday morning, July 2, the Hospital requested leave to file a written response to the plaintiff's motion for leave to file an amended complaint. The trial court agreed, and it granted the Hospital time to respond in writing to the motion for leave to amend before ruling on the motion to amend. When the parties were unable to agree on an expedited briefing, discovery and hearing schedule as to the motion for leave to amend, the court determined it would proceed at that time with the preliminary injunction hearing pursuant to Koplin's original complaint. Koplin informed the court that at the close of his proofs, he would seek leave to amend his complaint to conform to the proofs. When the Hospital moved *in limine* to bar any evidence relating to the proposed amended complaint, the trial court declined to grant the motion, stating that it would consider the evidence as it was offered.

Koplin called Ken Bauer, the Hospital president, as an adverse witness. Bauer testified he drafted and signed the May 25, 1990, letter to Koplin notifying him of the Hospital's intention to use its easement over Spinning Wheel Road to gain access to the Office Park of Hinsdale property to the west commencing on or about June 10. He described the present and proposed use of the Hospital's property and its recent development of the back section of the property for use as a temporary parking lot while the parking garage on the main Hospital campus is being rebuilt. Over the Hospital's objections, Bauer testified there was no intent to pave the lot,

light poles had been installed, and the lot is not improved with sewer or drainage facilities. He testified the Hospital's intent to use its easement across Spinning Wheel Road was to provide a safe means of ingress and egress to the employees who would be parking in the lot by channeling the traffic over to the signalized intersection at Salt Creek Lane and Ogden Avenue. Shuttle buses would run between the lot and the Hospital campus a mile away via the easement over Spinning Wheel Road. Over the Hospital's objection, Bauer testified the Village of Hinsdale advised the Hospital that no permits were necessary for the lot. A permit for the lights was being sought from the village, however. Also over the Hospital's objection, Bauer testified the Hospital had worked extensively on its temporary parking plan with the village building commissioner and various village commissions and had not been notified that it was not in compliance with any village zoning ordinances.

Next, Caroline Koplin-Palmer testified to her father's interests in parcels A, B and C and the condition and uses of those properties. She testified to the Hospital's recent graveling over of the baseball field and the curb cut made on the west side of Spinning Wheel Road. She testified she called Ken Bauer after receipt of his letter to learn more about the Hospital's intentions and by what right they intended to use the easement. Over the Hospital's objection, she testified the east property was zoned "O-3," a general office district.

Alfred Koplin then testified about his ownership of parcels A, B and C and the improvements he had made on those properties. Koplin stated he never gave his permission or consent to the Hospital's use of Spinning Wheel Road as a means of access to the property to the west, or to the Hospital's destruction of Spinning Wheel Road's western curb.

Dan Goetsch, an expert traffic engineer, testified on Koplin's behalf as to the likely impact of the actions taken by the Hospital on the traffic and safety in and around Spinning Wheel Road. Based on his study of the area, Goetsch testified the Hospital's destruction of the western curb of Spinning Wheel Road posed a hazard to north-south traffic on Spinning Wheel Road by virtue of an increased potential for traffic accidents with east-west traffic crossing the easement. He foresaw a traffic conflict occurring within the parking lot on the west property, and traffic from the west lot availing itself of access to Ogden Avenue via Spinning Wheel Road in order to avoid the traffic at the signalized intersection at Salt Creek Lane and Ogden Avenue. He additionally saw a potential con-

flict with left-turning traffic at Spinning Wheel Road and Ogden Avenue. On cross-examination, he stated his opinion of the hazard presented by the proposed plan did not take into account traffic control signs or enforcement thereof, but he noted that Spinning Wheel Road is a private road not subject to police regulation.

Over the Hospital's objection, the court took judicial notice of the Hinsdale zoning code and admitted it in evidence. The code has not been submitted as part of the record on appeal, however. The Hospital's motion for entry of a directed finding at the close of Koplin's case was denied, and it proceeded to present its case.

Ken Bauer testified it is the Hospital's intention that the right-of-way across Spinning Wheel Road be used only by people heading to or leaving the east property. He testified that the Hospital intends to erect signs which would prohibit turns of any nature for people headed to the east so they would have to proceed straight across Spinning Wheel Road to the east property. There would be stop signs installed so that east-west traffic would come to a complete stop prior to crossing the right-of-way on Spinning Wheel Road. Traffic headed west from the east property parking lot would not be turn-restricted. There would be a guard stationed at the east property 12 hours a day, five days a week, to enforce the no-turn signs for eastbound traffic across Spinning Wheel Road. Bauer testified that as to its employees, the Hospital has a mechanism for imposing fines for traffic or parking violations, as well as disciplinary actions for repeated offenses. Bauer testified the route over the Spinning Wheel Road easement was not intended to be a permanent one; the west curb cut will be restored to its original condition and the parking area returned to a grassed condition.

The Hospital next presented the testimony of David Miller, an expert traffic and transportation consultant. He testified that left turns onto Ogden Avenue to head east are very difficult due to the volume of traffic on Ogden Avenue. He testified that Hinsdale Hospital's plan to use its right-of-way for east-west crossings of Spinning Wheel Road would be safer than traffic trying to make left turns onto Ogden Avenue. Miller also testified that the proposed east-west use of the easement across Spinning Wheel Road would not interfere with north-south traffic using Spinning Wheel Road. In his opinion, the proposed plan would improve the situation for north-south traffic on Spinning Wheel Road because the plan would minimize turns at the intersection of Spinning Wheel Road and Ogden Avenue. He also noted that traffic on Spinning Wheel Road is low volume and that Spinning Wheel Road is designed to accom-

modate higher volumes of traffic. He did not foresee a problem with people from the Office Park of Hinsdale using what would be a very circuitous route to get to Spinning Wheel Road, and he saw no benefit to the west property as a result of the plan to utilize the easement in this east-west manner. On cross-examination, Miller admitted the safest possible situation would be not to use the east property for this proposed temporary parking lot plan.

After the Hospital rested its case, Koplin moved to amend his pleadings to conform with the proofs. Despite the Hospital's objection that granting such motion would deprive it of an opportunity to respond to the amended complaint and that the hearing should have concerned only the original complaint filed, the trial court allowed the motion. The trial court then ruled orally that Hinsdale Hospital would be preliminarily enjoined from using the right-of-way in an east-west direction, and it ordered it to restore the curb which was cut on the west side of Spinning Wheel Road. The trial court also preliminarily enjoined Hinsdale Hospital from using the east property as a parking facility based on its grant of Koplin's motion to amend the pleadings and its determination that Koplin was entitled to such relief pursuant to section 11–13–15 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 11–13–15). Koplin's subsequently submitted written order was entered by the trial court on July 5, and this interlocutory appeal followed.

The Hospital first contends the court misinterpreted its Spinning Wheel Road right-of-way as a matter of law by restricting its use of the right-of-way to provide only north-south access to Ogden Avenue. It argues that in the absence of any ambiguity, its right-of-way "for all purposes" entitles it to unlimited reasonable or necessary use of the full width of the easement. Further, as the owner of the right-of-way with the right and duty to maintain the easement, its cut in the west curb of Spinning Wheel Road nearly put the servient estate, Spinning Wheel Road, "in a condition in which Hinsdale Hospital may enjoy the full width and extent of its right-of-way, without any harm or prejudice to the plaintiff." Asserting that the reasonable use of a right-of-way is not restricted to that existing at the time of the grant, the Hospital argues that its proposed expansion of its use of the right-of-way is a sensible development which does not constitute an unreasonable deviation from the original grant.

Koplin responds that the Hospital's right-of-way "for all purposes" gives it only the right to pass over the easement in some particular line which the evidence shows is the line between Ogden

Avenue and the rear service entrance of the building which was in existence at the time of the grant of the easement and which the Hospital now uses for health rehabilitation, treatment and education purposes. Koplin argues there is no evidence Spinning Wheel Road could have been or was ever used for access to the west property because parcel C was vacant and unimproved in 1967, and the western curb of Spinning Wheel Road, which he installed, was continuous and unbroken until May 1990 when the Hospital cut the curb. Moreover, the right-of-way over Spinning Wheel Road which was conveyed here specified no particular width and, thus, the Hospital has the right to use a reasonably necessary or convenient width, but has no right to use the full width of Spinning Wheel Road. Finally, Koplin argues the Hospital's proposed extension of the easement to accommodate its property to the west is improper in that it exceeds the intent of the easement granted.

We find the court did not err in preliminarily enjoining the Hospital's use of the easement for ingress or egress to or from the property to the west of Spinning Wheel Road for the reasons which follow.

■■ ■ The trustee's deed conveyed parcel C subject to "[a] perpetual right-of-way ·for all purposes over subject property in favor of [the east property]." The words "right-of-way" denote a tenure by which land is held and are descriptive of the easement right, not the land to which it is affixed. (*Tallman v. Eastern Illinois & Peoria R.R. Co.* (1942), 379 Ill. 441, 446-47.) The instrument creating the easement is construed in accordance with the intention of the parties. (*D.M. Goodwillie Co.· v. Commonwealth Electric Co.* (1909), 241 Ill. 42, 72; *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.* (1983), 117 Ill. App. 3d 636, 645.) Such intention is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the object to be obtained. (*Goodwillie*, 241 Ill. at 72.) The practical construction given ·to the instrument granting the easement by the parties' conduct is to be considered only if there is an ambiguity. *Weaver v. Natural Gas Pipeline Co.* (1963), 27 Ill. 2d 48, 50; *Goodwillie*, 241 Ill. at 73.

■■ The easement created by the instant deed is an "easement appurtenant." An easement is a right or·privilege in real estate of another, and, when exercised in connection with the occupancy of other land, it is said to be appurtenant thereto. (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379.) The tract of land benefitted by the easement is the dominant tenement or estate, and the

land burdened with the easement is the servient tenement or estate. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17.) Here, the east property owned by the Hospital is the dominant estate, and Koplin's parcel C, Spinning Wheel Road, is the servient estate. As the owner of the dominant estate, the Hospital is entitled to necessary use of the easement; "necessary use" has been defined as such use as is reasonably necessary for full enjoyment of the premises. (*Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 1039.) The owner of the dominant estate has the right and duty to maintain the easement; however, he cannot, for the sake of his convenience, materially alter the easement so as to place a greater burden on the servient estate or interfere with the use and enjoyment of the servient estate by its owner. (*Flower*, 135 Ill. App. 3d at 1039-40; *Beggs v. Ragsdale* (1983), 120 Ill. App. 3d 333, 337.) In the absence of restrictions, an easement appurtenant may be used for the general benefit of the dominant estate; any attempt to use an appurtenant easement for the benefit of nondominant land may be enjoined, however. W. Burby, Real Property §32, at 85 (3d ed. 1965).

The Hospital's implication that its perpetual right-of-way "for all purposes" over parcel C is coterminus with the boundaries of the parcel itself is specious. *Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, and *Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, the Hospital's own authority, reveal the fallacy of its position. *Schaefer* and *Flower* both demonstrate that the owner of the right-of-way or easement is entitled to use the full width specified where the width of the easement or right-of-way reserved *is specified in the instrument*. The right-of-way in Schaefer was specifically described as "a right of way 40 feet wide for ingress and egress," thus entitling the owner of the right-of-way to use of the full 40-foot width. (*Schaefer*, 13 Ill. 2d at 466.) Similarly, the owner of the right-of-way across the strip of land in *Flower* was entitled to use the full 15-foot width specified in the grant. *Flower*, 135 Ill. App. 3d at 1036; see also *Rudolph Wurlitzer Co. v. State Bank* (1919), 290 Ill. 72, 82; *The Fair v. The Evergreen Park Shopping Plaza of Delaware, Inc.* (1954), 4 Ill. App. 2d 454, 468.

The width of the right-of-way here which was reserved in parcel C was not specified. When no width is specified, the width of the right-of-way is such as is reasonably necessary and convenient for purposes for which the right-of-way was created. (*Vallas v. Johnson* (1979), 72 Ill. App. 3d 281, 282; 25 Am. Jur. 2d *Easements & Licenses* §78, at 485 (1966).) Considering the language of the in-

strument as a whole, the circumstances contemporaneous with the transaction, the state of the thing conveyed and the object to be obtained, the apparent intent of the parties here was to provide access to the rear of the building on the east property which, in 1967, was used as the Spinning Wheel Restaurant. A cut in the east curb of Spinning Wheel Road which Koplin paved in 1967 facilitates access from the rear service entrance of the building on the east property to the service road, to the right-of-way and to Ogden Avenue. It is clear the "reasonably necessary and convenient" width of the Hospital's right-of-way is considerably less than the full width of Spinning Wheel Road itself. As such, the Hospital's unauthorized cut in the western curb of Spinning Wheel Road was not "necessary to the proper enjoyment of the easement reserved," and it had no right to make it. See *Doan v. Allgood* (1923), 310 Ill. 381, 384.

■■ Moreover, as noted above, any attempt to use an appurtenant easement for the benefit of nondominant land may be enjoined. "[A] right of way appurtenant to a particular lot cannot be used as a mode of access to another lot to which it is not appurtenant." (25 Am. Jur. 2d *Easements & Licenses* §77, at 483 (1966).) Stated otherwise, "an easement appurtenant may not be extended by the owner of a dominant estate to accommodate other lands which he may own and for which the easement was not originally intended." (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 388; see also *Department of Transportation v. Smith* (1981), 100 Ill. App. 3d 814, 817; *Heritage Standard Bank & Trust Co. v. Trustees of Schools* (1980), 84 Ill. App. 3d 653, 657.) The rule is thus because no one but an owner of land can create an easement over it. *Heritage*, 84 Ill. App. 3d at 657; *Waller v. Hildebrecht* (1920), 295 Ill. 116.

■■ By the terms of the trustee's deed, the right-of-way over Spinning Wheel Road was appurtenant only to the east property. Accordingly, the Hospital's attempt to extend it as a mode of access to and from the west lot, albeit such use is intended only for the benefit of the east lot, was properly enjoined. Notwithstanding the traffic control devices the Hospital stated it intends to install to prevent persons other than its employees from accessing Spinning Wheel Road from the west property, *no* right-of-way on any portion of Spinning Wheel Road exists in favor of the west property, not even if such use could be confined to the Hospital's employees. Despite the Hospital's argument that the curb cut providing access to the west property will only benefit the east property and will be a detriment—not a benefit—to the west property, it is clear the cut

affords a mode of access over the Spinning Wheel Road right-of-way to "another lot" to which it is not appurtenant.

■■■ *Diller v. St. Louis, Springfield & Peoria R.R.* (1922), 304 Ill. 373, does not support the Hospital's argument that its right-of-way "for all purposes" means that it may use it to cross to other lands, including property west of Spinning Wheel Road. The easement reserved in the deed in *Diller* specifically "reserved the right to drive and maintain underground ways under the surface of the lands conveyed, to connect with other lands or mines." (304 Ill. at 375.) The easement reserved at bar was "for all purposes over subject property [Spinning Wheel Road] *in favor of the [east property]*." No "ways" or connection with "other lands" as in *Diller* were specified.

■■■ The Hospital's further argument that its proposed expansion of its use of the right-of-way is a sensible development which does not constitute an unreasonable deviation from the original grant is incredible. It is true that the reservation of the right-of-way entitles the one having the right to adapt it to the improvements of the age (*Diller v. St. Louis, Springfield & Peoria R.R.* (1922), 304 Ill. 373, 379) and that such adaptation may include an increase in the number of persons using the right-of-way (*Logan v. Brodrick* (1981), 29 Wash. App. 796, 631 P.2d 429). However, it is assumed that the parties had in mind the normal development of the dominant estate (W. Burby, Real Property §32 (3d ed. 1965); *Logan*, 299 Wash. App. 796, 631 P.2d 429), and a charge of "excessive use" may be sustained when a use of the dominant estate is undertaken which does not fall within what reasonably might be considered "normal development."

The proposed increase in the easement use here is not related in any way to a normal development of the dominant estate. The 200-plus parking lot proposed bears no relation whatever to the Hospital's use of the east property as the site of its health-related facility. It is a temporary parking lot plan developed to accommodate the displacement of employee parking caused by garage construction at the Hospital's main campus a mile away from the dominant estate. This type of increased use in no way compares with the improvement and expansion of the resort facilities on the dominant estate in the *Logan* case which caused increased traffic on the roadway easement which had been granted to the resort owners.

Based on this record, we find the court did not err in preliminarily enjoining the Hospital from using its right-of-way over Spinning Wheel Road for ingress or egress to or from the Office Park

of Hinsdale property to the west of Spinning Wheel Road.

We do believe the court erred, however, in preliminarily enjoining the Hospital's use of the east property for temporary parking lot purposes. The court entered its order in light of its grant of Koplin's motion to amend the pleadings to conform to the proofs and its determination that the evidence presented showed zoning violations properly enjoined under section 11—13—15 of the Code (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—15). In pertinent part, that section permits an owner of real property to institute, in addition to other remedies, an action ·to prevent, restrain or correct imminent or existing ordinance violations on property located within 1,200 feet of the owner's property. It is intended to afford relief to private citizens whose municipal officials are slow or reluctant· to act or whose local authority's actions are not protective of the interests of adjacent landowners. *Launius v. Najman* (1984), 129 Ill. App. 3d 498.

The Hospital asserts the court's order must be reversed and the cause remanded because it was entered in contravention of the applicable rules of procedure (Rule 6.04(d) of the Rules of the Circuit Court of the 18th Judicial District, requiring personal service of a notice of motion be accomplished by 4 p.m. of the second court day preceding the hearing of the motion) and its constitutional right of due process.

It complains the entry of the court's order under the circumstances at bar denied it a fair opportunity to respond to Koplin's new claims, to prove the proposed parking lot use was in conformance with the Hinsdale zoning ordinance as interpreted by the village and itself, to seek a zoning variance before using the lot or to otherwise prepare a defense. Koplin responds that evidence of the use of the east property was either offered by the Hospital itself or admitted without objection, thus waiving the error, and that the court properly exercised its discretion in conforming the pleadings to the evidence adduced.

It is indisputable that evidence of the Hospital's proposed use of the east property for temporary parking lot purposes was introduced by both parties at the hearing. Each party had its own reasons for offering it. The Hospital offered it in support of its second affirmative defense to Koplin's original complaint that east-west use of the Spinning Wheel Road right-of-way would cause increased traffic congestion and be a hazard to north-south traffic. The Hospital's evidence tended to show that the traffic plan proposed would improve traffic safety by channeling left-turning traffic to a signal-

ized intersection and that east-west traffic, controlled by appropriate traffic signs, would not interfere with north-south traffic on Spinning Wheel Road. As such, that evidence was relevant and material to the cause of action set out in Koplin's original complaint.

On the other hand, Koplin's line of inquiry had at least a twofold purpose: first, to establish misuse of the easement as charged in his original complaint and second, to establish violations of the Hinsdale zoning ordinance as charged, *inter alia*, in his proposed amended complaint. As noted above, the court granted the Hospital's motion that it be given time to respond in writing to Koplin's motion for leave to file his amended complaint. Counts V and VI of the proposed amended complaint ostensibly set forth a cause of action under section 11—13—15 of the Municipal Code. Those counts alleged that the parking lot violated section 9—104(A) of the Hinsdale zoning code, which provides that off-street parking as a principal use is permitted only when expressly authorized in the zoning district in question; that an off-street parking facility such as the one constructed on the Hospital's east property, zoned "O-3," is not an expressly authorized primary use under the general office district zoning classification; that section 9—103(C)(1) of the Hinsdale zoning code prohibits the establishment or maintenance of any temporary use without application for and issuance of a certificate of zoning compliance; that the parking facility on the east property was constructed without such certificate of compliance; that certain temporary uses provided for in section 9—103(D) of the Hinsdale zoning code do not include an off-street parking facility such as the one constructed by the Hospital on the east property; that the parking facility violates section 9—103(F)(4) of the Hinsdale zoning code in that it will generate undue detrimental effects on surrounding uses and streets; that the parking facility violates section 9—104(C)(3)(c) of the Hinsdale zoning code in that it is not paved; and that the parking lot violates section 9—104(B)(2)(c) of the Hinsdale zoning code in that it is intended to serve a principal use not in the same or an adjacent zoning district and within 1,000 feet of the lot on which the principal use to be served is located.

When the hearing on Koplin's original complaint commenced, the Hospital moved *in limine* to exclude any matters relating to the proposed amended complaint. The court declined to grant that motion, stating it would rule on the evidence as it was offered, and Koplin stated his intent to ask at the close of the evidence that the pleadings be amended to conform to the proofs.

During the hearing, the court overruled the Hospital's objec-

tions to evidence concerning (1) the Hospital's intention not to pave the lot; (2) its installation of light poles; (3) the lack of sewer or drainage facilities; (4) the Hospital's understanding that no building permit was necessary for the construction of the parking lot; (5) its lack of notification that it was not in compliance with the zoning ordinance with respect to construction of the lot; (6) the "O-3" zoning classification of the east property; (7) the propriety of an off-street parking facility in an "O-3" zoning district; (8) the temporary uses permitted under the Hinsdale zoning code; and (9) the accessory uses permitted with respect to a primary use. The Hospital also objected to zoning issues raised by Koplin during argument in the course of trial on the motion for the admission of the Hinsdale zoning code, during the motion for a directed finding and during the motion to conform the pleadings to the proofs. As the Hospital points out, it objected so often to testimony relating to issues which it argued were outside of the scope of Koplin's original complaint that the court at one point allowed a continuing objection to such questioning.

Under these circumstances, we cannot conclude the Hospital waived the error either by adducing evidence concerning the use of its property or by failing to object. As noted above, evidence of its use of the property was relevant to its second affirmative defense, and it objected to all evidence which would have been relevant and material to the zoning issues raised by Koplin's proposed amended complaint. Evidence of the zoning issues was not material to Koplin's original complaint, and the court had already determined that it would allow the Hospital to respond in writing to Koplin's motion for leave to file the amended complaint. Notwithstanding that, the court overruled all of the Hospital's objections made to evidence concerning the zoning issues to which the Hospital had not yet had a chance to respond.

■■ Section 2—616 of the Civil Practice Law provides that "[a] pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(c).) "The power to amend under [subsection (c)] cannot *** be applied to deprive either party of a trial upon the merits of issues made." Ill. Ann. Stat., ch. 110, par. 2—616, Historical & Practice Notes, at 528 (Smith-Hurd 1983).

■■ Koplin offered no excuse at trial for his eleventh-hour filing of the motion for leave to amend his one-count complaint with five more counts, the latter two of which concerned not the Hospi-

tal's use of the easement, but, rather, the use of its own property. The constitutional right to due process requires notice and an opportunity to be heard and defend in an orderly proceeding. U.S. Const. amend. XIV; Ill. Const. 1970, art. I, §2; *City of Chicago v. Cohn* (1927), 326 Ill. 372, 374-75; *Diamond Mortgage Corp. v. Armstrong* (1988), 176 Ill. App. 3d 64, 69.

In *Pettigrew v. National Accounts System, Inc.* (1966), 67 Ill. App. 2d 344, Pettigrew's declaratory judgment action against National, and National's and another's suit for injunction against Pettigrew and another defendant, were consolidated at the time the parties appeared in court on National's motion for a temporary injunction. The court continued the consolidated cases to the following morning at which time it intended to start hearing evidence. Despite being advised by Pettigrew and National that the only matter before the court was National's motion for temporary injunction, Pettigrew's repeated objections during the hearing to testimony which was not pertinent to the issue of whether a temporary injunction should issue, and Pettigrew's protestations that it had not yet had an opportunity to examine National's answer to his declaratory judgment complaint (which was filed that morning) or to answer National's complaint for injunction, the court nonetheless entered a decree the day after the hearing dismissing Pettigrew's complaint for declaratory judgment and granting National a permanent injunction against Pettigrew. 67 Ill. App. 2d at 354.

On appeal, the injunction was dissolved and the cause remanded for proper proceedings. The court found Pettigrew had not been afforded due process:

> "Without sufficient opportunity to examine the answer filed to his complaint, Pettigrew could not determine what evidence he should present to establish his contention on the issues made by the pleadings. As to the injunction complaint, he was not permitted the time allowed by the Civil Practice Act to file his answer and thereby put matters at issue. Under this posture of the case, it was not proper to proceed with the hearing on the merits prior to issues having been formed by the pleadings. The right to plead, according to the general law and established rules, is implicit in any concept of ordered liberty and fairness and is required by a right sense of justice. [Citation.] The action of the trial court in compelling the litigants to proceed on the merits of the case, at a time when both parties asserted they were before the court only on a motion for temporary injunction, without per-

mitting them to plead in the manner prescribed by the Civil Practice Act and Rules of Court, and in denying them the opportunity to prepare and present their case fairly and fully, was a denial of due process." 67 Ill. App. 2d at 352.

In general, the granting or denying of leave to amend a complaint prior to judgment is a matter within the sound discretion of the trial court, and its decision will not be disturbed on appeal unless there is an abuse of that discretion. (*Bridgeman v. Terminal R.R. Association* (1990), 195 Ill. App. 3d 966, 972.) Under the circumstances at bar, we conclude it was an abuse of the court's discretion to permit Koplin to amend his pleadings to conform to the proofs where it served to deprive the Hospital of its due process right to prepare and offer a defense to a cause of action different from that stated in the original complaint.

For the foregoing reasons, the court's judgment granting the preliminary injunction enjoining the Hospital's use of its property is reversed. The cause is remanded for further proceedings at which Koplin may pursue anew the matter of amending his complaint to include a cause of action challenging the propriety of the Hospital's proposed use of the east property. In light of this result, it is unnecessary to address the Hospital's further contention there was insufficient evidence and no findings to support the preliminary injunction.

Accordingly, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded for further proceedings as noted above.

Affirmed in part; reversed in part and remanded.

WOODWARD and McLAREN, JJ., concur.

PARCEL A

APPENDIX A

PARCEL B

WEST PROPERTY

EAST PROPERTY

N

SALT CREEK LANE

PARCEL C (SPINNING WHEEL ROAD)

COUNTY LINE RD.

TRI-STATE TOLLWAY →

OGDEN AVENUE

OAK ST.

COUNTY LINE RD.