MAYWOOD-PROVISO STATE BANK, Trustee, *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF LISLE *et al.*, Defendants-Appellees.

Second District   No. 2—91—1005

Opinion filed September 1, 1992.—Rehearing denied October 7, 1992.

Andrew B. Spiegel, of Wheaton, for appellants.

Maloney & Craven, of Des Plaines (E. William Maloney, of counsel), and Robert V. Borla, of Borla, North & Associates, of Downers Grove, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs Maywood-Proviso State Bank, as trustee under trust No. 7938, Ed Cunningham, and Horst Adler filed a two-count amended complaint in the circuit court of Du Page County naming as defendants the Village of Lisle, Lee J. Herrera and Jeannette S. Devane. Count I sought a declaration that a valid easement existed over property owned by Herrera and Devane, a permanent injunction barring Herrera and Devane from interfering with or obstructing plaintiffs' installation of water and sewer lines over the easement and an injunction against the Village of Lisle directing it to reinstate certain permits related to the development of property which the easement allegedly benefitted. Count II sought an injunction requiring Herrera and Devane to abate certain zoning violations and asked for reasonable attorney fees and costs. Count II was subsequently amended to request compensatory and punitive damages against Herrera and Devane for their refusal to allow plaintiffs to use the easement. At a bench trial, the trial court granted defendants' motion for judgment at the close of plaintiffs' case, and plaintiffs filed this appeal.

Plaintiffs raise the following issues on appeal: (1) whether the trial court's decision to enter judgment in favor of defendants was against the manifest weight of the evidence because the evidence supported plaintiffs' claim of a valid grant of a utility easement; (2) whether the easement was appurtenant, thereby binding the subsequent owners of the servient estate; and (3) whether Herrera and Devane had actual or constructive notice of the utility easement.

The following facts are relevant to our disposition of this appeal. Plaintiffs alleged in their amended complaint that they had easement rights over a parcel of property owned by Herrera and Devane based on either a grant of an easement by the previous owners of the parcel or an easement created by a plat of resubdivision. The complaint further alleged that Herrera and Devane had notice of "said easement as set forth in John B. Stern's Subdivision" through either a land survey of the property or a title commitment, both of which were prepared for the sale. Plaintiffs eventually amended count II of their complaint to seek compensatory and punitive damages based on Herrera and Devane's refusal to allow them to utilize the easement.

Plaintiffs filed a motion for summary judgment, arguing that an easement had been previously granted to John Stern and that a plat of subdivision had been recorded giving all subsequent title holders notice of the easement. Plaintiffs' motion was denied.

Defendants Herrera and Devane filed a counterclaim seeking a declaration that the Stern resubdivision was invalid and void and an order barring plaintiffs from asserting any easement across the property. On August 27, 1990, the trial court entered an "order of default and declaratory judgment" on the counterclaim. The court found that the plat of subdivision executed on July 19, 1977, was "null, void and of no effect" because of a defective owner's certificate. The court further ruled that any purported easements depicted in the plat of subdivision were null, void and of no effect. The order also contained an express finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) but was never appealed.

Herrera and Devane also filed a third-party complaint against George and Sondra Donatelli, the previous owners of the property. The third-party complaint sought money damages from the Donatellis should plaintiffs prevail on their claims against defendants. The third-party complaint was based upon a breach of certain covenants in connection with the execution of a warranty deed.

Defendant Village of Lisle moved for summary judgment, and an agreed order was entered granting the motion. The order contained Rule 304(a) (134 Ill. 2d R. 304(a)) language but was not appealed, and Village of Lisle is not a party to this appeal.

On April 9, 1991, Herrera and Devane (defendants) filed a motion for sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137) against plaintiffs. On that same date, the trial court ordered that defendants' motion for sanctions be reserved for trial. The court further ordered that the complaint and third-party complaint be tried in sequence. Prior to commencement of the trial, the court also ruled that count I and count II of the complaint would also be tried in sequence as a ruling in favor of defendants on count I would necessitate a decision favorable to defendants as to count II.

The testimony and exhibits at trial established the following. The Stern subdivision consisted of a single-family residence and nine lots covering about three acres. Defendants' property is adjacent to lot 8 in the subdivision. John Stern testified that as of July 8, 1977, the property comprising the subdivision was in a land trust of which he and his wife were the beneficiaries. There was no other land in the trust.

The subject property was sold to George and Sondra Donatelli on July 8, 1977. Plaintiffs' exhibit 20 is a document entitled "UTILITY EASEMENT" which is dated July 8, 1977, and is signed by the Donatellis. This document purports to grant to John Stern and his wife a utility easement over the Donatellis' property "for the purpose of providing the property and adjacent property" with certain utilities. While this document sets forth a description of the Donatelli property, it does not describe the property to which the easement will provide benefit. This document was not recorded until after this lawsuit was filed.

According to George Donatelli, he had no discussions with John Stern or his wife prior to the closing regarding the grant of an easement. On the date of the closing, the Sterns telephoned the Donatellis and asked them over to their home. Stern presented George Donatelli with the document granting the utility easement and told him that he wanted him to read it. Donatelli had nothing to do with the preparation of the document and did not know it existed prior to Stern handing it to him. Donatelli testified that he did not "really read" the document but "glanced at it."

Stern testified to a different version of the events surrounding the execution of the grant of easement. He identified the document as a utility easement drawn up at his direction on July 8, 1977. He stated that the document was drafted because they needed a record of the easements before the plat of resubdivision was recorded. According to Stern, he had two or three conversations with the Donatellis prior to the closing concerning the need for an easement on the property. The first such conversation occurred at least a month prior to their purchasing the property. Stern told them that the easements were needed to access Elm Street for the water and sewer lines when they subdivide the remaining property. The Donatellis said, "okay, no problem." He denied calling them to his house on the morning of the closing and giving them an ultimatum or giving them the document at his house. According to Stern, the Donatellis signed the grant of easement at the closing.

The document was present at the closing, and the Donatellis had a copy. The document was to be recorded but apparently was not. Sometime later, after Stern lost the subdivision at a foreclosure sale, he explained to Joseph Giampa, a real estate broker who was involved in the purchase of the property at the foreclosure sale, that "[he] [had] easements on those two lots that were sold." He also told Giampa that the Donatellis were aware of the easements. He then gave Giampa the signed grant of easement which was in a file.

While he knew the property was in a land trust, Stern designated himself and his wife as grantees rather than the trustee. The purchase contract was silent as to any easement. He thought that because the Donatellis were pushing to buy the lot, he told them that they would have to sign an easement document at the closing and they said fine. On redirect examination he explained that it was not his intent that the grant of easement be personal to him and his wife. The document described an easement consisting of the north 10 feet of the property, the south 20 feet of the property and the east 10 feet of the property.

On July 19, 1977, the trustee executed a plat of subdivision which also set forth an easement of the same dimensions as that in the aforementioned document. This plat of subdivision was recorded on July 19, 1977.

Defendants subsequently purchased the property from the Donatellis. George Donatelli testified that he met defendants in 1985 when they came to look at the property. While he testified that he did not tell defendants that they would have to build an attached garage because the driveway was on an easement, plaintiffs introduced his deposition wherein he testified that the only way he could have put a garage on the property was if it were attached because he "didn't have enough easement rights." Donatelli also stated that he told Devane that he did not have enough easement rights but explained that what he meant was access for the Village of Lisle to get to telephone and electric lines at the back of the property. When asked whether he told Devane that any garage would have to be attached because of easements, Donatelli said he did not recall. Again, Donatelli's deposition testimony was introduced in which he stated that he told Devane a garage would have to be attached because of the easements. He had no other conversations with defendants concerning easements on the property.

Donatelli also testified that at the closing, on August 28, 1985, there was a discussion about his having to pay $600 as a title indemnity bond because of an easement and that defendants were sitting in the same room when the discussion took place. There was no discussion as to whom the easement ran in favor of. Donatelli thought it was an easement for the Village to access the property to work on "telephone poles and stuff."

Lee Herrera testified that at the closing he heard the word "easement" used in conjunction with the property he was purchasing. He denied that John Stern ever told him about an easement on his property or that he learned of the easement from the Donatellis. He also

stated that when he and Devane conversed with George Donatelli prior to the sale, Donatelli did not mention the word "easement."

Richard Kuhn, defendants' attorney for the purchase of the property, testified that the title company's commitment indicated there were easements of record. He denied having any knowledge of the grant of easement on the date of the closing. Neither the Donatellis nor their attorney made any reference to a grant of easement at the closing. The first time Kuhn became aware of the grant was during this litigation.

Jeannette Devane testified that she did not receive a copy of the grant of easement at the closing. She conceded that at her deposition she testified that there was "some discussion" of an easement at the closing. She also admitted seeing a plat of survey at the closing that depicted an easement on the property. Ms. Devane denied that John Stern told her there were easements on the property or that the swimming pool was built over one of the easements. She also denied that she and Herrera discussed a reduction in the purchase price because of the pool encroachment. The first time Devane had any knowledge of an easement was when Giampa discussed it with her in the spring of 1989. She never saw the grant of easement at or before the closing and had never heard about it from anyone.

Horst Adler, one of the plaintiffs in this case, testified that he and Giampa went to visit defendants in April 1989. They went to defendants to inform them of their intent to use the easements to install water and sewer lines. According to Adler, Herrera stated that he had the impression it was only a 10-foot rather than a 20-foot easement. Herrera testified that he said "don't you believe the 20-foot easement you claim to have is actually 10 feet." Herrera explained that 10 feet was an arbitrary number he chose because it was half of what Giampa claimed the easement to be.

Giampa testified that during the conversation with defendants Herrera asked where the easement was in relation to his property and said he thought it was a 10-foot easement and that he would have to look at his plat. Neither defendant denied the existence of an easement at that time. Herrera told Giampa that he wanted to discuss it with his lawyer to see whether it was a 10-foot or a 20-foot easement.

John Stern also testified that Herrera came to his home and said he was considering purchasing the Donatelli property. Herrera asked if there was anything he should know about the property, and Stern told him there was an easement on the property and that the Donatellis had built their swimming pool on it. According to Stern, he explained that there was an easement on three sides of the property.

Later, at a village meeting, Stern asked Herrera how he was doing with the Donatellis, and Herrera thanked him for telling him about the pool and stated that he was able to get the cost reduced. He had no further conversations with defendants.

At the close of plaintiffs' case, defendants moved for a judgment in their favor. In granting defendants' motion, the court stated that defendants could not have constructive or actual notice based on the plat of subdivision as the plat was void *ab initio*. As to the grant of easement, the court ruled that the Sterns were not titleholders to the property as beneficiaries of the land trust and as such the easement to them was in gross and did not run with the land. The court determined that none of the evidence established that defendants had actual or constructive notice of the grant of easement. The court did not reach the question of whether the easement had been abandoned.

The court found no liability as to count II due to its ruling on count I and further found the third-party complaint to be moot. The court did not rule on defendants' prior motion for Rule 137 sanctions. The court added that it considered its order to be final. The court's written order, entered on May 28, 1991, granted defendants' motion as to count I and dismissed count II and the third-party claims as moot. This order contains no reference to the motion for sanctions.

On June 5, 1991, plaintiffs filed a post-trial motion to vacate the judgment. On June 10, 1991, pursuant to defendants' motion to amend the order of May 28, 1991, the court entered a *nunc pro tunc* order which added a finding, pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), that there was no just reason to delay enforcement or appeal of the May 28 order. Also on June 10, the court granted defendants' motion for summary judgment against Lange Construction based on the evidence adduced at trial. On August 2, 1991, the court denied plaintiffs' post-trial motion, and on August 28, 1991, plaintiffs filed their notice of appeal.

The notice of appeal states that plaintiffs are appealing "the orders of [the court] entered on May 28, 1991, *** and from [its] order of August 2, 1991." The notice makes no reference to the June 10, 1991, *nunc pro tunc* order.

■■ As an initial matter, defendants have filed a motion to strike plaintiffs' notice of appeal and to dismiss the appeal. They raise three arguments in that regard. First, they contend this court lacks jurisdiction to consider the appeal because the notice of appeal specifies only the May 28, 1991, and August 2, 1991, orders, neither of which contains language, pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), necessary to render the orders appealable. Second, defendants

maintain that the notice of appeal is defective because it fails to request any specific relief as required by Supreme Court Rule 303(c)(2) (134 Ill. 2d R. 303(c)(2)). Third, defendants assert that they have suffered prejudice due to plaintiffs' failure to serve them with a docketing statement pursuant to Supreme Court Rule 303(g) (134 Ill. 2d R. 303(g)).

The May 28, 1991, order was not appealable at the time of its entry because it did not dispose of all the claims in the case and lacked the necessary language pursuant to Supreme Court Rule 304(a) to make it appealable. (*Marsh v. Evangelical Covenant Church* (1990), 138 Ill. 2d 458, 468; *Berger v. Matthews* (1991), 216 Ill. App. 3d 942, 944.) The claim for sanctions under Rule 137 was not disposed of at that time. On June 10, 1991, the court entered an "amended judgment order" which, among other things, purported to add the necessary Rule 304(a) language *nunc pro tunc* to the May 28, 1991, order. An order *nunc pro tunc* can only supply an omission in the record of an order which was actually made but not included in the record. (*Phil Dressler & Associates, Inc. v. Old Oak Brook Investment Corp.* (1989), 192 Ill. App. 3d 577, 581.) A court may not, by use of a *nunc pro tunc* order, attempt to cure a jurisdictional defect in a prior order. (*Dressler & Associates, Inc.*, 192 Ill. App. 3d at 581; *Rauscher v. Albert* (1985), 138 Ill. App. 3d 799, 805.) On the other hand, a court is generally empowered to modify or amend its own orders prior to a notice of appeal being filed.

Here, while the June 10, 1991, order purports to be a *nunc pro tunc* order as to the Rule 304(a) language, it merely amended the May 28, 1991, order to include such language pursuant to defendants' motion. To the extent the June 10 order attempted to make the Rule 304(a) finding *nunc pro tunc* to May 28, such language lacked efficacy as an improper effort to alter the substance of the May 28 order as of May 28, 1991. However, prior to any notice of appeal being filed, either defendants or plaintiffs were free to request the addition of the Rule 304(a) language in the May 28, 1991, order. (134 Ill. 2d R. 304(a).) Thus, the May 28, 1991, order became appealable as of June 10, 1991, when the court amended the order to include the Rule 304(a) finding. See 134 Ill. 2d R. 304(a).

We are thus left with the question of whether plaintiffs' notice of appeal was defective for failure to specify the June 10, 1991, order, notwithstanding its specification of the final and appealable order of May 28, 1991, and the order of August 2, 1991, denying plaintiffs' motion to reconsider. While the filing of a notice of appeal is jurisdictional, such notice is to be liberally construed. (*Lang v. Consumers In-*

*surance Service, Inc.* (1991), 222 Ill. App. 3d 226, 229.) The purpose of the notice of appeal is to inform the appellee that the appellant seeks review by a higher court. (*Lang,* 222 Ill. App. 3d at 229.) A notice of appeal should be considered as a whole and will be deemed to confer jurisdiction on an appellate court if it fairly and adequately sets out the judgment complained of and the relief sought, thereby advising the successful litigant of the nature of the appeal. (*Lang,* 222 Ill. App. 3d at 229-30.) Where the deficiency in the notice is one of form, rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of notice is not fatal. *Lang,* 222 Ill. App. 3d at 230.

The notice of appeal in this case, while not specifying the June 10, 1991, order, did specify the May 28, 1991, order. It is the substance of that latter order, of course, that plaintiffs desire to appeal along with the order denying their motion to reconsider. As of June 10, 1991, the May 28, 1991, order was appealable. While the June 10, 1991, order arguably should have been included in the notice of appeal, it was the intent of plaintiffs to appeal from the May 28, 1991, order. Consequently, the failure to specify the June 10, 1991, order, which did nothing more than render the May 28 order appealable, is not fatal and does not deprive us of jurisdiction to consider plaintiffs' appeal. We also perceive no prejudice suffered by defendants under these circumstances (see *March v. Miller-Jesser, Inc.* (1990), 202 Ill. App. 3d 148, 157-58), especially in light of the fact that it was defendants who sought to amend the May 28 order to add the Rule 304(a) finding. Based on the foregoing, we need not consider plaintiffs' motion to file an amended notice of appeal.

Defendants alternatively argue that the notice of appeal is defective because it fails to request specific relief as required by Supreme Court Rule 303(c)(2). Rule 303(c)(2) states that the notice of appeal "shall specify the *** relief sought from the reviewing court." (134 Ill. 2d R. 303(c)(2).) Our supreme court has held, in interpreting the former version of Rule 303(c)(2), that the failure to include a prayer for relief in a notice of appeal is an error of form not substance and, absent prejudice to the appellee, does not deprive the appellate court of jurisdiction. (*National Bank of the Republic v. Kaspar American State Bank* (1938), 369 Ill. 34, 40.) The appellate court has interpreted Rule 303(c)(2) in the same fashion. *Illinois Bell Telephone Co. v. Purex Corp., Ltd.* (1980), 90 Ill. App. 3d 690, 693; *Peluso v. Singer General Precision, Inc.* (1977), 47 Ill. App. 3d 842, 851.

In the present case, the notice of appeal fails to request any relief. It does state, however, that plaintiffs are appealing from the May

order granting defendants' motion for a directed finding. It is evident that the relief they are seeking is a reversal of that order and an opportunity to continue the trial to its conclusion. Defendants have pointed to no prejudice they have suffered as a result of plaintiffs' failure to include a request for relief in the notice of appeal, nor do we perceive any under these circumstances. We conclude that the lack of a prayer for relief in the notice does not deprive us of jurisdiction.

The last contention raised by defendants is that plaintiffs failed to serve defendants with a docketing statement as required by Rule 303(g) and that defendants have been prejudiced because the time to file a responsive docketing statement has expired. Rule 303(g) provides, in pertinent part, that an appellant "shall file with the clerk of the reviewing court a docketing statement, together with proof of service thereof." (134 Ill. 2d R. 303(g).) Implicit in this rule is the requirement that the appellant serve a copy of the docketing statement on the appellee. Plaintiffs failed to file the proof of service with this court, and we must therefore necessarily conclude they failed to serve a copy of the docketing statement on defendants.

Defendants have cited no cases, nor has our research indicated any, addressing the significance of an appellant's failure to serve a docketing statement on an appellee. Nevertheless, in our opinion, the requirement to serve the docketing statement cannot be viewed as jurisdictional. The only jurisdictional step is the filing of the notice of appeal. (*Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 400.) Thus, the failure to comply with the requirement of serving the docketing statement on the appellee cannot be the basis for a dismissal of this appeal. Defendants have not asked us to take any other specific action in this regard, and we decline to speculate as to what other action, if any, would be appropriate.

While defendants claim they have suffered prejudice because the time to file a responsive statement has lapsed, they fail to point out the nature and extent of such prejudice. The rule provides for a responsive statement "if it is deemed necessary." (134 Ill. 2d R. 303(g).) Defendants have not shown the necessity of such a response. Consequently, we perceive no prejudice suffered by defendants as a result of plaintiffs' failure to serve them with a docketing statement.

Finally, while we have found no jurisdictional defect or any prejudice resulting from plaintiffs' failure to comply with the foregoing rules of appellate procedure, we would be remiss not to comment on such noncompliance. The supreme court rules are to be diligently adhered to in prosecuting and defending an appeal in this court. The rules are readily available and, in our opinion, easily understandable.

In very few instances will there be an excuse in failing to comport with their requirements.

In turning to the substantive issues presented in this appeal, we initially discuss the procedures controlling defendants' motion for a judgment in their favor. Section 2—1110 of the Civil Practice Law provides, in part:

"Motion in non-jury case to find for defendant at close of plaintiff's evidence. In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110.)

In interpreting the verbatim forerunner of section 2—1110 (see *Heller v. Jonathan Investments, Inc.* (1986), 113 Ill. 2d 60, 71), our supreme court established the procedure and standard to be followed in a non-jury case by the trial court in considering a motion for a finding or judgment in favor of a defendant at the close of a plaintiff's case in chief. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.) The court must consider all the evidence, including any favorable to the defendant, pass on the credibility of the witnesses, draw reasonable inferences from the testimony and generally consider the weight and quality of the evidence. (*Kokinis*, 81 Ill. 2d at 154.) The court is not to view the evidence in a light most favorable to the plaintiff. (*Kokinis*, 81 Ill. 2d at 154.) If the plaintiff has failed to make out a *prima facie* case, that is, to present at least some evidence on every essential element of his cause of action, the defendant is entitled to judgment as a matter of law. *Heller*, 113 Ill. 2d at 71.

If the plaintiff has made out a *prima facie* case, however, then the court, as the trier of fact, must weigh the plaintiff's evidence. (*Kokinis*, 81 Ill. 2d at 155.) The weighing process may result in the negation of some of the evidence necessary to the plaintiff's case, or, on the other hand, sufficient evidence necessary to establish the *prima facie* case may remain. (*Kokinis*, 81 Ill. 2d at 155.) The court must enter judgment in favor of the defendant as to the former situation and deny such motion in the latter circumstances. (*Kokinis*, 81 Ill. 2d at 155.) The trial court's decision to allow such a motion should not be reversed by the appellate court unless it is contrary to the manifest weight of the evidence. *In re Doyle* (1991), 144 Ill. 2d 451, 470.

In this case, in ruling upon defendants' motion pursuant to section 2—1110, the trial court found that the easement created by the grant from the Donatellis was an easement in gross rather than an easement appurtenant and, therefore, such easement did not "run with the land." Thus, because the easement did not run with the land, it could not be enforced against defendants, and they were accordingly entitled to judgment in their favor as to plaintiffs' claims premised upon an alleged valid and enforceable easement across defendants' property. While we must review the trial court's decision consistent with the standards enunciated in *Kokinis*, we are not bound to accept the reasons given by the trial court for its judgment, and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.

■ The only theory upon which plaintiffs premised their claim at trial was that an easement appurtenant was allegedly created by the document executed by the Donatellis. Agreements imposing burdens on one estate for the benefit of another must be strictly construed. (*D.M. Goodwillie Co. v. Commonwealth Electric Co.* (1909), 241 Ill. 42, 72.) An instrument creating an easement is construed in accordance with the intention of the parties. (*D.M. Goodwillie Co.*, 241 Ill. at 72; *Koplin v. Hinsdale Hospital* (1990), 207 Ill. App. 3d 219, 230.) Such intent is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the object to be obtained. (*Koplin*, 207 Ill. App. 3d at 230.) To acquire an easement by grant, although no particular words are necessary, they must clearly show an intention by the grantor to confer an easement, and such terms must be definite, certain and unequivocal. *Friedman v. Gingiss* (1989), 182 Ill. App. 3d 293, 295-96.

■ An easement is a right or privilege in real estate of another, and, when exercised in connection with the occupancy of other land, it is considered appurtenant thereto. (*Koplin*, 207 Ill. App. 3d at 230.) The land benefitted by the easement is the dominant estate, and the burdened land is the servient estate. (*Koplin*, 207 Ill. App. 3d at 230-31.) If there is no dominant estate, there can be no easement appurtenant. (*Waller v. Hildebrecht* (1920), 295 Ill. 116, 122.) An easement appurtenant may not be extended by the owner of the dominant estate to accommodate other lands which he may own and for which the easement was not originally intended (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 388) because no one but an owner of land can

create an easement over it (*Heritage Standard Bank & Trust Co. v. Trustees of Schools* (1980), 84 Ill. App. 3d 653, 657).

In the present case, the plaintiffs claim an easement appurtenant inuring to the benefit of their property was created by the following document:

## "UTILITY EASEMENT

INDENTURE made this 8th day of July, 1977 between Grantors, GEORGE R. DONATELLI and SONDRA DONATELLI, his wife, and Grantees, JOHN B. STERN and ANNE STERN, his wife, and their successors and assigns:

WITNESSETH, that in consideration of the sum of ($10.00) Ten Dollars and other good and valuable consideration, receipt whereof is hereby acknowledged, the said GEORGE R. DONATELLI and SONDRA DONATELLI grant to the said JOHN B. STERN and ANNE S. STERN, his wife, a utility easement over the following portion of the West half of Lot 4 in Walter P. Quinn's Resubdivision, being a subdivision in Sections 2 and 11, Township 38 North, Range 10, East of the Third Principal Meridian, according to the Plat thereof recorded December 3, 1959 as Document 949395:

A non-exclusive access right to the North 10 feet of the West half of Lot 4; the South 20 feet of the West half of Lot 4; and the East 10 feet of the West half of Lot 4 as utility easements for the installation, maintenance, relocation, renewal and removal of manholes, inlets, catch basins, vaults, electrical and communications conduits, cables, wires, pedestals, transformers sanitary lines and appurtenances, storm sewer lines and appurtenances, watermains and appurtenances, cable antenna, and all other equipment and appurtenances necessary for the purposes of providing the property and adjacent property with telephone, electrical, sanitary, storm, water and television services, under and upon said areas.

IN WITNESS WHEREOF, we hereby set our hands and seals.

/s/ George R. Donatelli (Seal)

George R. Donatelli

/s/ Sondra Donatelli (Seal)

Sondra Donatelli"

This document does not create a valid easement appurtenant, however, because it fails to set forth, with definite, certain and unequivocal terms, the nature and extent of such easement. While it purports to create a utility easement "for the purpose of providing the property and adjacent property" with such utility services, it does not identify specifically the property (dominant estate) which the easement would benefit. There is no legal description, or any other description, of the dominant estate. It is impossible to discern from the document what is meant by "the property and adjacent property." An owner of land cannot claim an easement over his land for his own benefit. (*Beloit Foundry Co.*, 28 Ill. 2d at 389.) Thus, the only reasonable inference is that the word "property" must refer to property other than that acquired by the grantors, the Donatellis. That being the case, "adjacent," which is defined as "[l]ying near or close to" (Black's Law Dictionary 41 (6th ed. 1990)), takes on unlimited possibilities as to its location. Furthermore, even if we inferred that "property" referred to the Donatellis' parcel, "adjacent property," without more, is no less imprecise as to its location and description. While a parcel need not be adjacent to the servient estate to properly constitute a dominant estate, it must nevertheless be identifiable.

George Donatelli testified during plaintiffs' case and denied having had any discussion with John Stern prior to July 8, 1977, pertaining to any easement. He also denied ever discussing with Stern whether Stern had plans to develop the property adjacent to his, nor did he know of any plans Stern had to develop the property. Donatelli had nothing to do with preparing the grant of the easement and merely glanced at it prior to signing it.

John Stern identified the document granting the easement as a "utility easement that we drew up for a piece of property that [he] sold to" the Donatellis. It was drafted at Stern's direction on July 8, 1977, the date of the closing. According to Stern, the easement needed to be completed prior to filing the plat for the John B. Stern resubdivision. Stern testified that he had conversed with the Donatellis prior to their purchasing the property and told them that an easement was needed over their property so Stern could access Elm Street for the purpose of converting water and sewer lines when the remaining property was subdivided.

On cross-examination, Stern stated that the property was in a land trust on July 8, 1977, yet he did not designate the trustee as the grantee. Rather, he used his and his wife's names but not intentionally. Significantly, there is no mention of an easement in the purchase contract between the Donatellis and the Sterns. He explained that he

orally advised the Donatellis that they would have to sign an easement at closing. On redirect examination, Stern testified that he did not intend the easement to be personal to him and his wife.

Donatelli's testimony fails to establish any intent on the part of himself and his wife to grant an easement benefitting any particular piece of property. While Stern testified that he told Donatelli that the easement was for the benefit of Stern's subdivision, there was no indication to that effect in the written contract to purchase between the Sterns and Donatellis. Furthermore, Stern did not testify that Donatelli had any knowledge of the nature and extent of Stern's subdivision such that we can conclude that Donatelli intended to grant an easement for the benefit of the subdivision.

■ Plaintiffs failed to establish, *prima facie*, that the document allegedly granting an easement did in fact grant one inuring to the benefit of the subdivision. While Stern's testimony arguably supports a finding that the Donatellis knew that the easement was to benefit the subdivision, there is no evidence that the Donatellis intended to grant such an easement in light of the document's failure to specify the subdivision, the absence of any mention of an easement in the contract of purchase and George Donatelli's testimony that no discussions of any easements occurred prior to Stern presenting him with the document on the day of the closing. The failure to establish the existence of a valid, enforceable easement compelled the entry of judgment in favor of defendants' on plaintiffs' claim. The trial court's decision to enter judgment in favor of defendants, while based on slightly different reasoning from ours, was not against the manifest weight of the evidence. Due to our disposition of this appeal based on the foregoing, we need not address the remaining issues.

For the above reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

INGLIS, P.J., and DUNN, J., concur.