2021 IL App (1st) 200256-U

No. 1-20-0256

Second Division
March 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RCB EQUITIES #3, LLC, a California limited liability company, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10 CH 36413 |
| CONRAD JAKUBOW, an individual; PREMIER BANK, an Iowa bank; JOSEPH & CONRAD, INC., an Illinois corporation; UNKNOWN OWNERS; and NON-RECORD CLAIMANTS, | ) ) ) ) ) ) | |
| Defendants (Conrad Jakubow, Defendant-Appellant). | ) ) ) | Honorable John J. Curry, Jr. Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order confirming the sale of a property is affirmed where the sale was not unconscionable or unjust, and defendant's remaining claims were waived.

¶ 2     This appeal stems from a mortgage foreclosure action against defendant-appellant, Conrad Jakubow. On appeal, defendant argues that the judgment of foreclosure and the order approving the sale of a property should be reversed where the circuit court (1) erred in finding defendant was not a victim of identity theft; (2) erred in granting summary judgment where there were multiple disputes; (3) misconstrued the Illinois Notary Act in finding a notary need not be present when a document is signed; and (4) erred in confirming the sale of the property for a price lower than the property's value. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4     The record before us reveals the following facts and procedural history.

¶ 5     On August 24, 2010, Greystone Bank (Greystone) filed a mortgage foreclosure action against defendant in connection with a "mixed used building" in the 3400 block of North Milwaukee Avenue in Chicago, Illinois (the Property).[1] In its verified complaint, Greystone alleged that it had loaned $600,000 to defendant as evidenced by a promissory note that was secured by a "Mortgage, Assignment of Rents and Security Agreement" (Mortgage). Greystone asserted that as of January 2, 2010, defendant had defaulted on the loan by failing to make the required payments. Both the note and mortgage were dated January 18, 2008 and were signed on defendant's behalf by his father, Joseph Jakubow (Joseph), pursuant to a power of attorney that was allegedly authorized and executed by defendant. The power of attorney was dated December 31, 2007. The complaint also joined Premier Bank, Joseph & Conrad, Inc., unknown owners, and

---

[1] The property was described as a "mixed used building with a commercial space [located on] the first floor and two apartments on the second floor."

non-record claimants as defendants.[2] Greystone also filed a motion for appointment of receiver to "collect rents and other income for the property *** pending the foreclosure sale in this action."

¶ 6    On September 24, 2010,  the circuit court entered an order granting Greystone's motion for appointment of receiver and continued the matter until October 18, 2010. The court further ordered that Greystone file a "brief regarding the provisions of the Civil Service Members Relief Act" given defendant's active status as a member of the military.

¶ 7    On October 18, 2010, counsel for defendant filed an appearance. On February 18, 2011, defendant was granted leave to file an answer to Greystone's complaint *instanter*.[3] The answer did not contain any affirmative defenses.

¶ 8    At some point, Greystone assigned its interest in the note and mortgage to RCB Equities #3, LLC (RCB) and accordingly, moved to substitute RCB as plaintiff in the case. On May 17, 2011, Greystone's motion to substitute RCB was granted.

¶ 9                          A. Motions for Summary Judgment

¶ 10    On September 14, 2011, RCB filed a motion for summary judgment. Defendant filed an amended response on January 13, 2012, arguing that he did not participate in the loan negotiations between Greystone and Joseph, authorize the execution of the note and mortgage, or "use, occupy, operate or maintain the property in any way." Defendant further argued that the power of attorney

---

[2] In its complaint, Greystone states that Premier Bank held a subordinate lien on the property and the property served as the principal place of business for Joseph & Conrad, Inc. which had a leasehold interest.

[3] On September 24, 2010, Joseph filed an answer *pro se* on behalf of defendant. The answer consisted of a form with a circle, indicating that there was "insufficient information with which to admit or deny" and stated, "to get professional advice from lawyer" as "other affirmative matter." On December 16, 2010, Greystone moved to strike the answer and a subsequent appearance by Joseph, arguing that Joseph lacked the capacity to file an answer on defendant's behalf and did not represent defendant. The motion was granted by the court on January 12, 2011.

failed to comply with statutory requirements and only applied to residential property rather than commercial property. Defendant attached an affidavit, in which he averred that he did "not execute the [2007] power of attorney." On February 29, 2012, the court denied RCB's motion for summary judgment.

¶ 11    On May 29, 2013, RCB again moved for summary judgment. This motion for summary judgment was based on a "Forensic Laboratory Report," which stated that it was "highly probable that [defendant] did in fact execut[e] the December 31, 2007 Power of Attorney." In response, defendant maintained that he did not execute the power of attorney and alleged that the attorney who attested to his signature on the power of attorney had been disciplined for notary fraud in a separate matter by the Illinois Attorney Registration and Disciplinary Commission. On August 5, 2013, the circuit court denied the second motion for summary judgment as to defendant but granted RCB summary judgment against all other named defendants. The court found that there was a material question of fact as to whether defendant signed the power of attorney authorizing his father to sign the note and mortgage.

¶ 12    On December 7, 2015, RCB moved to reconsider. On a hearing on the motion, the parties conceded that an evidentiary hearing was required regarding authorization for the power of attorney. Accordingly, the matter was set for an evidentiary hearing on February 15, 2017 and RCB withdrew its motion for reconsideration.

¶ 13                                B. Evidentiary Hearing

¶ 14    The evidentiary hearing consisted of the testimony of three witnesses: Diane Marsh, Joseph, and defendant.

¶ 15    Diane Marsh, a forensic document examiner, testified that she compared the 2007 power of attorney to 54 exemplars of defendant's signature to determine whether they were signed by the

same person. Her examination process included enlarging the signatures, observing them under a microscope, and doing a side-by-side comparison with the signature on the power of attorney. In comparing the signatures, she looked at the beginning strokes, ending strokes, and letter formations. She also observed how the signature sat on the baseline, "relative proportions such as the height of the letters to the lower-case letters," lower extenders, and "how each letter is formatted, plus the slant, connecting strokes, ending strokes." Marsh opined that it was highly probable that the signature on the power of attorney was made by defendant.

¶ 16    On cross-examination, Marsh testified that she did not look at the original power of attorney but instead, examined a photocopy of the document. She acknowledged that a document "would lose some feature or some clarity of the signature" each time it is photocopied. However, in this case, she could clearly see the letter formation. Specifically, she noted that "[y]ou can see the Capital C, how it's made *** where it is on the baseline" and the last name. Marsh did not analyze the document "to see if everything was correct."

¶ 17    Marsh further testified that the exemplars with signatures were not all contemporaneous. Despite a time difference between the signatures, she stated that the "signatures are very similar" and she "did not find any fundamental differences between the exemplar signatures and the questioned signature." She further opined that a "practiced hand is [not] capable of duplicating a signature." When asked if she had "ever been misled by a good forgery," Marsh responded "[n]ot that I can think of at this moment."

¶ 18    Joseph testified that, due to his own credit problems, he had used defendant's credit for several years to obtain financing and opened three credit cards in defendant's name. Defendant was deployed overseas with the military when these transactions occurred. When asked how he entered these transactions," Joseph responded that he would generally sign defendant's name but

for real estate transactions, he would use a power of attorney. He testified that defendant had "knowingly" granted him "powers of attorney," which was "[w]ay back" in the "early 2000s." These powers of attorney permitted real estate transactions, involving "property on Thorndale, something in Ridge Park." When asked to clarify if he was saying that "his son gave [him] a power of attorney to purchase a property on Thorndale in Park Ridge?", Joseph answered "[n]ot in Park Ridge, no. I don't recall that one." He then testified that his son did not grant him a power of attorney to purchase property.

¶ 19     With respect to the property at issue, Joseph contacted attorney Michael Fiandaca to prepare the power of attorney. Fiandaca provided him a form to sign and Joseph signed defendant's name and dropped it off at Fiandaca's office to be notarized. He neither saw Fiandaca personally nor saw him notarize the form. Joseph testified that he used the power of attorney to refinance the property at issue. He did not provide defendant with any information regarding the transaction.

¶ 20     On cross examination, Joseph acknowledged that he had once received a power of attorney from defendant. This power of attorney pertained to "one transaction, **** for the [purchase of the] Park Ridge property." However, he could not recall when he received it, where he and defendant were when the power of attorney was signed, and whether he explained the circumstances surrounding the transaction to defendant. For the property at issue, he forged defendant's name as he was "familiar" with it, "without any practice or focus on trying to [copy the signature]" to look like [defendant's]."

¶ 21     Defendant testified that he was a Lieutenant Colonel with the United States Army. He was deployed to Iraq in 2003 and 2004 and later deployed to Afghanistan in 2006 and 2007. Defendant testified that he gave Joseph two powers of attorney. The first was given in 2003, prior to his deployment to Iraq, and the other was given in 2006, prior to his deployment to Afghanistan. The

powers of attorney were given so that his father could manage his financial affairs in the event of his death. Both powers of attorney were drafted by Fiandaca, who had also represented him during his divorce in 2005.

¶ 22    Defendant first learned of his father's unauthorized use of his name for credit in 2009 when he ran a credit report. He testified that his father obtained three credit cards in his name without authorization and used his name to purchase real estate on several occasions. These included purchases of Chicago properties on Thorndale Avenue, Long Avenue, the property at issue, as well as a hotel in Wisconsin Dells. Defendant stated that he did not receive any of the proceeds from any of the transactions. In addition, his father obtained two loans in defendant's name.

¶ 23    Between the years of 2005 and 2006, defendant was involved with Jakubow Enterprises, Ltd., a family business formed for "speculative future ventures." Around 2007, after his return from Afghanistan, he purchased a condo in Chicago for investment purposes and "basically applied that property to the family company." Thereafter, his involvement with the company was limited to extricating himself from the problems created by his father. For instance, after learning of the unauthorized loan for the property at issue in 2009, he authorized Jakubow Enterprises, Ltd. to make payments towards the loan. He had the company pay until he could get a "handle on what was happening."

¶ 24    At some point, Jakubow Enterprises, Ltd. stopped making payments on the mortgage for the property. Defendant testified that he never agreed to assume the obligations of the company. He also testified that he did not inform Greystone that he was not accepting the loan obligations, but subsequently had the company make the mortgage payments on the property. Defendant acknowledged that the property was deeded to him in 2001 but could not specifically remember

that he owned it. He further admitted that he was never asked to transfer title to the property to anyone after 2001.

¶ 25                                    C. Post-Hearing

¶ 26    After the hearing, RCB filed a memorandum of law and facts in support of its allegations. RCB argued that defendant was the responsible debtor and mortgagor pursuant to a power of attorney which was presented by Joseph and relied upon by Greystone when it loaned $600,0000 on a note secured by a mortgage on the property.

¶ 27    In his response, defendant argued, *inter alia*, that the power of attorney was manipulated and invalid because the appearance of defendant before the notary was required under the Notary Act. Defendant also argued that RCB took the deposition of Fiandaca without notice and still was "unable to produce any information from [him] that he in fact properly notarized the [defendant's] signature, there was a conflict of interest as Fiandaca was involved in transactions with Joseph at the time the power of attorney was executed, and Joseph was a "fiduciary *** working in his own interests."

¶ 28    In reply, RCB argued, *inter alia*, that (1) defendant's contention that the power of attorney was manipulated was unfounded; (2) Fiandaca's statement was a sworn statement rather than a deposition and therefore, required no notice; (3) defendant's contention that Fiandaca did not see defendant sign the power of attorney was incorrect as his sworn statement provided that he could not recall but defendant was certainly in the building at that time; (4) defendant's argument that there was a conflict of interest was immaterial because Fiandaca's name did not appear as a party to the instrument; (5) defendant's argument as to breach of fiduciary duty by Joseph was irrelevant to the issue of whether the power of attorney was authentic.

¶ 29                                    D. November 2017 Order

¶ 30    On November 13, 2017, the circuit court issued a written order entering judgment for RCB. The court noted that "the question presented at [the evidentiary] hearing was whether [defendant's] signature on the power of attorney authorizing the loan documents held by [RCB] was authentic." After hearing the testimony and reviewing the evidence, the court found that defendant failed to meet his burden in proving that the power of attorney was fraudulent.

¶ 31    The court first addressed defendant's contention, as argued in his response brief, that the power of attorney was not properly notarized because Fiandaca did not see defendant sign it. The court held that the Notary Act requires "the notary public to 'determine either from personal knowledge or from satisfactory evidence, that the person appearing before the notary and making the acknowledgement is the person whose true signature is on the instrument' " and a "showing of satisfactory evidence can be made by the fact that the person is personally known to the notary." Because defendant's testimony showed that Fiandaca personally knew him, as he represented him in his 2005 divorce and prepared two prior powers of attorney, the court found that the requirements under the Act were satisfied.

¶ 32    Next, the court addressed "whether defendant met his burden of offering evidence that is clear and convincing from disinterested witnesses." The court noted that "clear and convincing [evidence] from a disinterested witness" was the quantum of proof necessary to impeach a notarized document in compliance with the notary statute. The court found that defendant did not meet his burden because he failed to offer testimony from any disinterested witness. The only two witnesses that testified for the defense were defendant and Joseph, neither of whom were disinterested. The court also found Joseph's testimony that he signed defendant's name to be not credible. The court noted that Joseph's testimony that he signed defendant's name without "any practice or any focus" was in contrast to "the [credible] testimony of [Marsh] *** that she did not

- 9 -

believe a practiced hand was capable of duplicating a signature." The circuit court found that defendant failed to meet his burden and entered judgment for plaintiff.

¶ 33                                    E. July 2019 Order

¶ 34    On April 26, 2019, RCB filed a motion seeking a judgment of foreclosure and an order appointing a selling officer based on the court's November 13, 2017 ruling. Defendant filed a response, contending that the November 2017 order was "a ruling as to only one of the many outstanding issues, namely whether the signature on the alleged [power of attorney] is by [defendant's] hand." Defendant asserted that "[n]o other matters at issue are disposed of or addressed in said order" because the issues raised by him included "fraud, breach of fiduciary duty, notarial fraud and misrepresentation, and other malfeasance." Accordingly, defendant requested the court deny RCB the relief sought in its motion and grant him leave to "propound additional discovery" and file an "amended and updated" answer and affirmative defenses.

¶ 35    On July 26, 2019, the court granted RCB's motion, finding that RCB was entitled to judgment of foreclosure. In its written order, the court held that none of alleged issues raised by defendant and recited in his response were previously made by the pleadings in the case. The court noted that, defendant's response to RCB's motion for summary judgment only raised the issue of forgery. Defendant also failed to "raise any other issue other than the forgery issue [up] through [the date of the evidentiary hearing]." As such, the sole dispute was with respect to forgery, and, defendant forfeited his right to assert any of the other issues. Finally, the court found that because defendant's answer either "admitted or responded to with an affirmation of insufficient knowledge to either admit or deny, [with the exception of the forgery issue], the plaintiff [could] rely on its verified complaint or supporting affidavit as evidence in its case" and "no further evidence of such fact [was required.]"

¶ 36    The court entered a separate order for judgment of foreclosure and sale and an order appointing a selling officer. The order stated that "[a]s of February 28, 2019, the total amount due in arrears for principal, interest, certain damages and fees and default interest is $1,387,346.54" and "[t]his sum does not include legal fees (costs, expenses and attorneys' fees)."

¶ 37    The foreclosure sale was scheduled for October 10, 2019.

¶ 38    On September 13, 2019, defendant moved the court to reconsider its July 26, 2019 order. Defendant requested the court to take judicial notice of two other cases: (1) an Illinois case involving defendant and a Thorndale property, where the bank claims against defendant were dismissed with prejudice because the court found defendant was a victim of identity theft; and (2) a Wisconsin case where defendant allegedly contested the award principally on the basis of his father's fraudulent use of a power of attorney, blatant self-dealing, and the bank's negligent underwriting" and the bank filed for dismissal and that matter was closed. Defendant argued that the adjudication of those cases in his favor warranted "reconsideration and resolution in [defendant's] favor, or resolution by a jury" in this case. Defendant further argued that the court's November 13, 2017 order, which was the basis for the court's July 26, 2019 order, only disposed of one outstanding issue and the remaining issues such as fraud, breach of fiduciary duty, and misrepresentation were not addressed. Defendant contended that these issues were "all fact-dependent issues unsuitable for resolution on the papers."

¶ 39    A hearing on defendant's motion was scheduled for November 19, 2019. A day prior to the hearing, on November 18, 2019, defendant filed a motion for leave to file amended affirmative defenses *instanter*. At the hearing on defendant's motion to reconsider, defendant acknowledged that the final decision in the Wisconsin case was entered on June 18, 2013, four years prior to the November 2017 judgment in this case. In addition, the final decision in the Illinois case involving

the Thorndale property was entered January 10, 2017, ten months prior to the November 2017 judgment. No motion to reconsider the November 2017 ruling was filed. Because defendant failed to bring these cases to the court's attention before the November 2017 ruling and failed to raise the issue at the evidentiary hearing, the court found that its subsequent July 2019 order was proper. The court further found that the "other legal issues at this point [have] been waived *** by the defendant given their assertion at the evidentiary hearing that the only remaining factual issue in the case was the issue of the alleged forged documents." As such, the court denied defendant's motion for reconsideration. The judicial sale was held on November 21, 2019 and the property was sold to a non-party bidder for $175,000. On December 16, 2019, defendant's motion for leave to file amended affirmative defenses was stricken.

¶ 40                                    F. January 2020 Order

¶ 41    On January 3, 2020, RCB filed its motion for order approving report of sale, confirming sale, and for possession. On January 9, 2020, defendant filed a response, arguing that RCB's motion to confirm should be denied or, in the alternative, an evidentiary hearing should be granted to determine whether the sale was unconscionable. Defendant argued that terms of the sale were unconscionable because (1) the sale price was far below the property's value, and (2) RCB's limited notice of sale made potential bidders less likely to attend. Defendant further argued that justice would otherwise not be done by leaving him with a deficiency judgment due to the fraud allegedly perpetuated by his father. RCB filed its reply. Attached to the reply was a broker's opinion of value, dated September 17, 2019, valuing the price of the property at $175,000.

¶ 42    The court granted RCB's motion, and on January 24, 2020, the court entered an order approving the report of sale and distribution and an order to evict and deed. From this order, defendant filed an appeal.

¶ 43     Defendant filed a motion to stay the order approving the sale pursuant to Illinois Supreme Court Rule 305 (eff. July 1, 2004), which was denied by the circuit court. Defendant then filed motions to stay in this court, which were also denied.

¶ 44     Before this court, RCB filed a motion to dismiss defendant's appeal pursuant to Illinois Supreme Court Rule 305(k) (eff. July 1, 2004), arguing that the appeal was moot because the property had been conveyed to a third party. The motion was denied.

¶ 45                                    II. ANALYSIS

¶ 46     On appeal, defendant argues that the circuit court's judgment should be reversed. Defendant contends that the circuit court erred in granting summary judgment for RCB and "compounded that error by denying defendant's post-judgments motions" and confirming the sale. Specifically, defendant argues that a reversal is warranted because (1) the circuit court erred in finding defendant was not a victim of identity theft; (2) summary judgment was not proper given the multiple disputes; (3) the circuit court misconstrued the Illinois Notary Act (5 ILCS 312/6-102 (West 2016)) in finding a notary need not be present when a document is signed; and (4) the circuit court erred in confirming the sale of the property when the sale price was lower than the property's value.

¶ 47                                    A. Jurisdiction

¶ 48     As an initial matter, we must determine this court's jurisdiction. RCB asserts that the notice of appeal failed to list all orders that defendant wishes to appeal and further contends that this appeal is moot. Although RCB later concedes that failure to list the relevant orders does not preclude appellate review, this court has an independent duty to review issues of jurisdiction. *In re Estate of York*, 2015 IL App (1st) 132830, ¶ 27.

¶ 49    The filing of a notice of appeal " 'is the jurisdictional step which initiates appellate review.' " *People v. Smith*, 228 Ill. 2d 95, 104 (2008) (quoting *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998)). Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) states that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." "A notice of appeal confers jurisdiction on a court of review to consider only the judgments specified in the notice of appeal." *Diocese of Quincy v. Episcopal Church*, 2014 IL App (4th) 130901, ¶ 35. However, an order not expressly mentioned in the notice of appeal is reviewable if it "was a step in the procedural progression leading to the judgment which was specified in the notice of appeal." (Internal quotation marks omitted.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23. An order is a step in the procedural progression "where it has the possibility of rendering all subsequent orders void." *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 726 (1996).

¶ 50    Here, defendant's opening and reply briefs indicate that he is challenging the circuit court's orders (1) entering judgment for RCB, (2) the judgment of foreclosure, and (3) entry of an order approving the sale. However, the notice of appeal only lists the January 24, 2020 order approving the foreclosure report of sale and distribution. Attached to the notice of appeal is the January 24 order and the July 2019 order entering judgment of foreclosure. Not attached or referenced is the November 2017 order entering judgment for RCB. The notice of appeal also does not include a statement of the relief sought.

¶ 51    We note that defendant mischaracterizes the November 2017 order as an order granting summary judgment. The record shows that RCB filed two motions for summary judgment, both of which were denied as to defendant. In lieu of ruling on RCB's motion for reconsideration of the denial of summary judgment, the court found that an evidentiary hearing was necessary to address

the power of attorney dispute. This resulted in a hearing on February 2017 and later a November 2017 judgment for RCB. Regardless of defendant's characterization of the order, there is no doubt that the November 2017 and July 2019 orders were steps in the procedural progression leading to the entry of the order listed in the notice of appeal. That order was an order approving the sale, which was based on the court's entry of judgment for RCB and judgment of foreclosure.

¶ 52    With respect to the relief sought, "the failure to include a prayer for relief in a notice of appeal is an error of form not substance and, absent prejudice to the appellee, does not deprive the appellate court of jurisdiction." *Maywood-Proviso State Bank v. Village of Lisle*, 234 Ill. App. 3d 206, 215 (1992). Here, RCB has not alleged, much less shown, that it was prejudiced by the defendant's failure to specify his requested relief in the notice of appeal. Therefore, we find that the deficiencies in the notice of appeal do not preclude our review.

¶ 53    Next, we address RCB's contention that this appeal is moot where the property has been conveyed to a third party pursuant to Illinois Supreme Court Rule 305(k) (eff. July 1, 2004). Although we have previously denied RCB's motion to dismiss this matter under Rule 305(k), we are well within our authority to reconsider our prior rulings and determine whether an issue is moot. See *Horvath v. Loesch*, 87 Ill. App. 3d 615, 621 (1980) (reconsidering previous denial of motion to dismiss on grounds of mootness); *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 64 (appellate court may reconsider previous ruling).

¶ 54    "An appeal is moot when it involves no actual controversy or the reviewing court cannot grant the complaining party effectual relief." *Steinbrecher v. Steinbreacher*, 197 Ill. 2d 514, 522-23 (2011). "[I]t is well established that without a stay, an appeal seeking possession or ownership of specific property that has already been conveyed to a third party is moot." *Northbrook Bank &*

*Trust Co. v. 2120 Division, LLC*, 2015 IL App (1st) 133426, ¶ 3; see also *Steinbrecher*, 197 Ill. 2d at 532.

¶ 55    This is so because absent a stay of judgment pending appeal, Rule 305(k) protects third-party purchasers of property from appellate reversals or modifications of judgment regarding the property. *Steinbrecher*, 197 Ill. 2d at 523. Rule 305 (k) provides, in pertinent part, that:

> "If a stay is not perfected within the time for filing the notice of appeal, *** the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgement is stayed; nor shall the reversal or modification affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to sale based on the judgment and before the judgment is stayed."

¶ 56    Rule 305(k) requires (1) the property be passed pursuant to a final judgment; (2) the property's right, title, and interest be passed to a person or entity who is not part of the proceeding; and (3) failure of the litigating party to perfect a stay of the judgment within the time for filing a notice of appeal. *Deutsche Bank National Trust Co. v. Roman*, 2019 IL App (1st) 171296, ¶ 23. Here, all three elements are satisfied. First, the property passed pursuant to a final judgment when the circuit court entered an order approving the sale on January 24, 2020. Second, title to and possession of the property were conveyed to a party who was not part of the proceedings. Third, defendant failed to perfect a stay of judgment. Although defendant filed motions to stay enforcement in both the circuit court and this court, the motions were denied, and no stay was in place. As such, we find that the protections afforded to a non-party under Rule 305(k) prevent any action that would impact the disposition of the transferred property at issue.

¶ 57 Nevertheless, defendant contends that the appeal is not moot since he has "no interest in possessing the Milwaukee Avenue property." He argues that a "change in possession does not moot this appeal [as other] practical remedies are available that do not disturb a transfer of title, such as a reversal of the deficiency judgment or an award of the proceeds from the sale." Because defendant seeks relief other than possession, we find that the appeal is not moot and proceed to the merits of the appeal.

¶ 58                                    B. Illinois Mortgage Foreclosure Law

¶ 59 Defendant argues that a reversal is warranted where the terms of the sale were plainly unconscionable and "justice would not be fostered by leaving [defendant] with a $1.5 million deficiency judgment due to his father's misdeeds."

¶ 60 Section 15-1508(b) of the Illinois Mortgage Foreclosure Law (IMFL) (735 ILCS 5/15-1508(b) (West 2020)) addresses the judicial sale and confirmation of sale of a property. "After a judicial sale and a motion to confirm the sale has been filed, the court's discretion to vacate the sale is governed by the mandatory provisions of section 15-1508(b)." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18. Section 15-1508(b) provides, in relevant part, that the circuit court "shall" enter an order confirming the sale unless (i) a notice required in accordance with subsection (c) of section 15-1507 was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) "justice was otherwise not done." 735 ILCS 5/15-1508(b) (West 2020). The party opposing the sale bears the burden of proving that sufficient grounds exist for the circuit court to not enter an order approving the sale. *Sewickley, LLC v. Chicago Title Land Trust Co.*, 2012 IL App (1st) 112977, ¶ 35. We review a circuit court's decision to approve a sale under an abuse of discretion standard. *Bank of America N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 116. The circuit court abuses its discretion when "its ruling rests on an error

of law or where no reasonable person would take the view adopted by the circuit court." *CitiMortgage, Inc. v. Bermudez¸* 2014 IL App (1st) 122824, ¶ 57.

¶ 61                                    1. Unconscionable Sale Price

¶ 62    Defendant objects to the order approving the sale based on section 15-1508(b)(ii), asserting that an evidentiary hearing was required because of the property's sale price. Defendant contends that the sale price of $175,000 was unconscionable because it was 18% of the property's appraised value of $985,000 and 29% of the original $600,000 mortgage. Relying on Greystone's appraisal of $985,000 when the property was refinanced and "recent sales of comparable properties used in the appraisal, [defendant argues that] the property likely has similar value today." Defendant attributes the low sale price to "RCB's limited notice of sale," where defendant contends that there was no evidence that RCB republished a new sale date after the initial sale date was postponed. According to defendant, this "reduced the likelihood the sale would be well-attended" and "cratered sale price, as fewer bidders meant less competition for the property."

¶ 63    Although section 15-1508(b) was amended to provide for an evidentiary hearing, this court has found that the legislature intended this language to create a " 'new, but limited, level of inquiry' " rather than "to require an extended evidentiary hearing after each sheriff's sale." *Deutsche Bank Nat. v. Burtley*, 371 Ill. App. 3d 1, 6 (2006). The extent of the hearing necessary in a given case rests within the sound discretion of the circuit court. *Id.*

¶ 64    In an earlier case, this court addressed when a hearing is necessary, stating:

> "To determine the extent of the hearing to be afforded the mortgagor, the court should look to the defendant's petition or motion and if there is an allegation of a current appraisal or other current indicia of value which is so measurably different than the sales price as to be unconscionable, then a hearing should be afforded to the defendant. On the

other hand, if the allegation of unconscionability rests on an appraisal rendered remote in time, the requisite of a formal hearing is not required under [section 15–1508(b)]." *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 115 (1993).

¶ 65   Here, defendant argues that sale price of $175,000 was unconscionable because it was 18% of Greystone's appraisal when the property was refinanced. However, Greystone's appraisal is not current as it is 13 years old, dating back to November 2007. As such, defendant's allegation rests on an appraisal that is remote in time. Defendant further points to "recent sales of comparable properties used in the appraisal, [to argue that] the property likely has similar value today." However, the broker's opinion of value, which was dated September 17, 2019, states the value at $175,000. This was the exact price realized at the sale. As such, we find that an evidentiary hearing was not required.

¶ 66   We further find that the inadequacy of the sale price is not fatal, by itself, to a confirmation of a judicial sale. "It is well recognized that it is unusual for land to bring its full, fair market value at a forced sale." *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 20; see also *Burtley*, 371 Ill. App. 3d at 8 (a loss is expected at a forced sale). Mere inadequacy of price "is not a sufficient reason to disturb a judicial sale absent other irregularities." *J.P. Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d. 254, 263-64. Unless there is fraud or some other irregularity in the foreclosure proceeding, the price at which the property is sold is "the conclusive measure of its value." *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 35. "This rule is premised on the policy which provides stability and permanency to judicial sales and on the well-established acknowledgement that property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss." *World Savings & Loan Ass'n v. Amerus Bank*, 317 Ill. App. 3d 772, 780 (2000).

¶ 67    Here, defendant fails to cite to any irregularities in the actual sale process. Defendant notes that the sale was originally scheduled for October 10, 2019 but was postponed 42 days to November 21, 2019 due to the filing of defendant's motion to reconsider. Although defendant argues that the postponement resulted in inadequate notice, section 15-1507 provides that "if the adjourned sale is to occur less than 60 days after the last scheduled sale, notice of any adjourned sale need not be given pursuant to this [s]ection." See 735 ILCS 5/15-1507 (West 2020). Defendant appears to concede that "the process may technically satisfy the statute's notice requirements for adjourned sale." Nevertheless, defendant argues that the lack of notice resulted in a "reduced likelihood the sale would be well attended." Defendant fails to cite to any case law providing that such a scenario would be an irregularity of the sale process. The record clearly reflects that the judicial sale was attended by multiple bidders who made multiple bids.[4] Therefore, we cannot find that the sale was unconscionable.

¶ 68                                    2. Justice Clause

¶ 69    Defendant further contends that the judicial sale should not have been confirmed pursuant to section 15-1508(b)(iv) of the IMFL, which applies when "justice was not otherwise done." Defendant argues that justice requires that defendant "not be saddled with a deficiency judgment not of his making" because it  was Joseph who refinanced the property "through a scheme that courts in similar cases [and financial institutions have] found was identity theft." Additionally, defendant notes that RCB has already "secured a summary judgment against defendant's [family] company, Joseph & Conrad, Inc., which leaves RCB free to pursue the sole party responsible for this predicament: Joseph."

---

[4] In a supplement to the report of sale, the selling officer noted that bidding began at $153,000 and increased in intervals of $1,000 until the sale price of $175,000 was reached.

¶ 70    At the outset, we note that section 15-1508(b) does not expressly define when "justice was otherwise not done." *McCluskey*, 2013 IL 115469, ¶ 19. However, our supreme court has interpreted the clause "to merely codify the long-standing discretion of the courts of equity to refuse to confirm a judicial sale." *Id.* Thus, the clause "acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment, based on traditional equitable principles." *Id.* ¶ 25. Illinois courts have traditionally interpreted the justice clause extremely narrowly. *NAB Bank*¸ 2013 IL App (1st) 121147, ¶ 27. As we observed in *NAB Bank*, "[t]here is only a handful of reported cases where a court vacated a sale under the justice clause, and almost all of them did so because of an unconscionable sale price, which is a separately listed basis on which a court can decline to confirm a sale." *Id.* ¶ 18. In practice, this section is "often invoked by defendants making a last-ditch effort to extricate themselves from a lost foreclosure case." *Id.* ¶ 16.

¶ 71    Here, we find that there was no injustice where defendant had the opportunity to prove his allegations of fraud at an evidentiary hearing. Defendant had the opportunity to present his case and did so through witness testimony at the hearing. Defendant called Joseph to testify in depth as to the alleged forgery in the present case and previous unauthorized transactions he made in defendant's name. However, the circuit court found his testimony to be not credible and instead credited the testimony of Marsh, who concluded that it was highly probable that defendant signed the relevant power of attorney. We see no basis to disturb the court's conclusion. As such, we find that defendant cannot invoke the justice clause.

¶ 72                                C. Other Claims

¶ 73    Defendant further raises several other claims, including that (1) the power of attorney creates a fiduciary relationship and there was a breach of that fiduciary duty in this case, (2) "strong

inferences of forgery and impropriety cloud the conduct of the attorney-notary [Fiandaca]," (3) the trial court misconstrued the Notary Act; and (4) "additional evidence proves his clean hands."

¶ 74    Defendant's arguments are waived. Generally, "[a]n affirmative defense must be set out completely in a party's answer to a complaint and a failure to do so results in a waiver of the defense." *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 53-54 (2003) (citing 735 ILCS 5/2-613 (West 2020)). An exception to the rule exists where a defendant raises a defense for the first time in a motion for summary judgment and the plaintiff has ample time before trial to respond to the defense. *Id.* at 54. Here, defendant's answer did not contain any affirmative defenses or articulate any of the claims he now raises. Additionally, none of the claims raised by defendant were clearly stated in his response to RCB's motion for summary judgment, except for forgery which the court addressed.[5] Therefore, we find that defendant waived his arguments.

¶ 75                                III. CONCLUSION

¶ 76    For the reasons stated, we affirm the judgment of the circuit court.

¶ 77    Affirmed.

---

[5] Defendant did not raise issues pertaining to the Notary Act in his answer or in his response to RCB's motion for summary judgment. The issue was first raised by defendant after an evidentiary hearing was held to determine whether the signature on the power of attorney was defendant's.